567 So.2d 1043 (1990)
Richard Allen LYNN, Appellant,
v.
STATE of Florida, Appellee.
No. 89-497.
District Court of Appeal of Florida, Fifth District.
October 11, 1990.
Richard Allen Lynn, Raiford, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
PETERSON, Judge.
Richard Allen Lynn appeals the judgment and sentence imposed following a jury verdict finding him guilty of robbery with a deadly weapon, fleeing or attempting to elude a police officer, and reckless driving. Lynn raises the issue of whether a pellet gun used in a robbery is a deadly weapon where the gun, when recovered by police, is not operational. He also alleges violation of his constitutional right to effective counsel by his counsel's failure to move for suppression of certain evidence obtained pursuant to a search. We reject his arguments and affirm.
At 8:18 p.m., on August 23, 1986, Lynn approached a cashier at a Red Lobster restaurant and instructed him to open the *1044 register and hand over the money. While the cashier was following the instructions, Lynn lifted his shirt to reveal a handgun wedged in his trousers and told the cashier to hurry up or he would "blow [the cashier's] ... brains out." When Lynn turned away briefly, the cashier activated an alarm. Lynn took the money and fled.
At 8:40 p.m., Officer Gibb, who had responded to the alarm and had obtained a description of Lynn from the cashier, saw a suspect who fit the description exiting a nearby convenience store. The suspect entered a yellow diesel Volkswagen Rabbit and was driving out of the parking lot when Gibb requested that he stop and get out of the car. Instead, the suspect turned off his lights and left at a high rate of speed, pursued by Officer Gibb in a marked police car. The chase was interrupted when the suspect pulled into the front yard of a residence and opened his car door. He was then instructed by the officer to get out with his hands over his head. The chase resumed when the suspect shut his door and took off. Shortly thereafter, however, the chase ended when the suspect lost control of his car and crashed into a fence. When Gibb again approached the car, the suspect was not in sight and was presumed to have escaped by vaulting a chain link fence. The police recovered from the Rabbit an air pellet pistol which was determined to be nonoperational at the time of recovery because pellets were jammed in the barrel and a CO[2] cartridge necessary to provide propulsion for the pellets was missing.
At approximately 9:30 p.m., Lieutenant Overman responded to a BOLO for the Red Lobster robbery suspect by proceeding to another convenience store where it had been reported the suspect had been spotted. When Lieutenant Overman arrived, he observed a suspect matching the description given by the cashier. The lieutenant reported the contact by radio and detained Lynn until Deputy Davidson arrived. Davidson conducted a search of Lynn's pockets and found 50 to 100 wadded up bills and a knife. Both officers testified that Lynn bore fresh scratches and cuts, some of which were still bleeding. Lynn was then advised of his Miranda rights, handcuffed, and placed in Davidson's patrol vehicle. When the Red Lobster cashier and Officer Gibb arrived, Lynn was identified as the robber and the operator of the crashed Rabbit.
The first issue raised by Lynn is whether an air pellet pistol may be classified as a "deadly weapon" within the meaning of the robbery statute when the gun was not operational at the time it was recovered, at least 22 minutes after the robbery. This issue requires us to determine initially whether an air pellet pistol can ever be viewed as a deadly weapon. We believe that State v. Jeffers, 490 So.2d 968 (Fla. 5th DCA 1986), provides the answer to the preliminary question. The weapon involved in the Jeffers case was a pellet rifle, and this court found that it could be a deadly weapon within the meaning of section 784.045, Florida Statutes (1983), depending upon the manner in which it was used. There is no reason for distinguishing between a pellet pistol and a pellet rifle for purposes of classification as a deadly weapon, since both discharge a pellet through the use of air pressure and are capable of causing death or injury. We hold, therefore, that an air pellet pistol, depending upon its use, can be considered to be a deadly weapon within the meaning of section 812.13(2)(a), Florida Statutes (1987).
The court in Jeffers also noted that the ultimate question of whether the weapon could be classified as deadly, depending upon its use, was a question for the jury. Jeffers at 969, citing Duba v. State, 446 So.2d 1167 (Fla. 5th DCA 1984). In Duba, this court rejected the expansive view of a deadly weapon contained in M.R.R. v. State, 411 So.2d 983 (Fla. 3d DCA 1982), and Bass v. State, 232 So.2d 25 (Fla. 1st DCA 1970), by agreeing with the dissent in Jones v. State, 238 So.2d 661 (Fla. 2d DCA 1970). The Jones dissent indicated that it was hardly possible to inflict death or great bodily harm with an unloaded gun not used as a bludgeon. The dissent reasoned that, because there had been no demonstrated present ability to inflict death or serious *1045 bodily harm with the unloaded pistol, the appellant should not have been convicted of aggravated assault.
The weapon in Duba was an air pistol designed to expel BBs through the use of a CO[2] cartridge. As in the instant case, the air pistol lacked the cartridge when seized by the police, and none was found in defendant's possession. Even after loading the pistol later with a cartridge, the police were unable to operate the pistol. The trial court was reversed for prohibiting defense counsel from arguing to the jury that the air pistol was not a deadly weapon because it lacked the necessary CO[2] cartridge and was not, in fact, operational. This court held that whether or not an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape, and material and the manner in which it was used. Duba fell short of proclaiming that an air pistol was a deadly weapon and established standards for a jury to determine that ultimate question.
In the instant case, whether the pistol was operational at the time of the crime was a question that was properly submitted to the jury. The evidence at trial was uncontroverted that, at the time it was recovered, the air pellet pistol was not operational. A witness testified that the pistol had never worked while owned by her husband (Lynn was not the owner), and a forensics expert was able to make it operate only after dislodging the jammed pellets and inserting a special CO[2] cartridge ordered from the manufacturer. Lynn could have removed the cartridge and intentionally jammed the pistol between the time of the robbery and the time of his apprehension, but there was no evidence presented at trial to suggest such an occurrence. No evidence was presented at trial that Lynn did anything with the pistol other than lifting his shirt to reveal the pistol wedged in the waistband of his trousers and telling the cashier to hurry up in handing over the money in the register or he would "blow [the cashier's] ... brains out."
The jury determined the pellet gun to be a deadly weapon after being instructed:
A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.
A weapon is legally defined to mean any object that would ... could be used to cause death or inflict serious bodily injury.
Neither party was prevented from presenting evidence as to whether the air pellet pistol was in working condition at the time of the robbery, eliminating the error present in Duba where restrictions were imposed by the trial judge upon defense counsel. The jury instruction with respect to a "deadly weapon" was in accordance with the "Florida Standard Jury Instructions in Criminal Cases," and no error was committed by submitting the question to the jury in compliance with Duba. We believe that whether the pistol was operational at the time of the crime was a question of fact to be resolved by the jury and, further, that competent, substantial evidence existed to support that conclusion. While a defense witness testified that, to the best of her knowledge, the pistol had never worked while it was owned by her husband, nonetheless, Lynn displayed the pistol and implied that it was operational at the time of commission of the crime by threatening to use it to "blow [the cashier's] ... brains out." Furthermore, the laboratory tests later found the pistol to be operational after removing jammed pellets and installing a CO[2] cylinder. While Lynn testified he borrowed the Rabbit on the afternoon of the robbery for the purpose of purchasing pellets, he also testified that he had no memory of the robbery. There was also testimony that, in the morning on the day of the robbery, Lynn and a defense witness went shopping for a cartridge for the pellet gun so the defense witness's boys could use the gun for target practice. It was not unreasonable for the jury to infer that the pistol was loaded and operational at the time of the robbery in light of Lynn's threat to use the pistol in a manner that implied it was operational and his inability to recall the robbery and thereby attempt to resolve the issue of operability.
*1046 The other issue which Lynn raises on appeal and which we feel warrants discussion is his claim of ineffectiveness of trial counsel. Although this claim would be raised most effectively in a Rule 3.850 motion, it can be raised on direct appeal. Blanco v. Wainwright, 507 So.2d 1377 (Fla. 1987). Conforming to the requirement of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Lynn alleges that the omission of trial counsel which was not the result of the exercise of reasonable professional judgment was the failure to move to suppress the money and the knife seized by Officer Davidson while being detained by Lieutenant Overman. The seizure of these objects took place prior to the identification of Lynn by the Red Lobster cashier as the robber and by Officer Gibb as the suspect that he chased in the Rabbit. Lynn agrees that, while Lieutenant Overman and Officer Davidson could detain him under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the Florida Stop and Frisk Law, section 901.151, Florida Statutes (1987), no authority exists for the warrantless search of his person. He makes the special point that he was wearing at the time only a pair of cutoff blue jeans and shoes while the BOLO report apparently indicated a suspect wearing jeans and a tank top. He also argues that no exigent circumstances existed for the search.
The Stop and Frisk Law requires that, before a pat-down search, an officer must have a reasonable belief that a detainee is armed with a dangerous weapon. State v. Webb, 398 So.2d 820, 824 (Fla. 1981). The very reason that Lieutenant Overman detained Lynn was his suspicion that Lynn fit the description of the armed robbery suspect of the Red Lobster. Lynn's decision to use the pistol in the robbery automatically placed him in the armed and dangerous category, and the officer had probable cause to conduct a pat-down search for weapons. Russell v. State, 415 So.2d 797 (Fla. 3d DCA 1982), rev. denied, 427 So.2d 737 (Fla. 1983).
Even if the pre-arrest search of Lynn's pockets that produced the money was invalid, the failure to move for suppression does not require reversal for ineffective assistance of counsel under Strickland unless a two-prong test is satisfied. The "Strickland test" was described by the Florida Supreme Court in Blanco v. Wainwright, 507 So.2d 1377, 1381 (Fla. 1987):
First, [the claimant] must identify the specific omission and show that counsel's performance falls outside the wide range of reasonable professional assistance. In evaluating this prong, courts are required to (a) make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment with the burden on claimant to show otherwise. Second, the claimant must show that the inadequate performance actually had an adverse effect so severe that there is a reasonable probability that the results of the proceedings would have been different but for the inadequate performance... .
Lynn admitted he was the person who had been pursued by Officer Gibb, and, while he had no recollection of a robbery, he did remember being in front of oak doors while seeing a Red Lobster outdoor sign and having money in his hand, driving away from the Red Lobster restaurant in the Rabbit, cutting off the legs of his trousers and removing his shirt. He was also able to recount in fairly specific terms his route from the Red Lobster to the scene of his arrest, a route consistent with descriptions of other witnesses at trial.[1]
We have no difficulty in determining that suppression of the money, as well as the knife which Lynn himself testified to carrying every day of his life, would have had no *1047 effect on the proceedings resulting in his conviction. This failure to satisfy the second prong of the Strickland test obviates the need for reversal based on ineffective assistance of counsel.
We find no merit in Lynn's remaining assignments of error. The sentence and conviction are affirmed.
AFFIRMED.
W. SHARP, and HARRIS, JJ., concur.
NOTES
[1] Lynn's testimony was offered in an attempt to establish the alleged defenses of insanity and voluntary intoxication and to show that he was incapable of forming the intent to commit armed robbery. The disbelieving jury found otherwise.