652 So.2d 1189 (1995)
Anthony Tyrone GOOCH, Appellant,
v.
STATE of Florida, Appellee.
No. 93-912.
District Court of Appeal of Florida, First District.
March 17, 1995.
Louis O. Frost, Jr., Public Defender and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
*1190 Robert A. Butterworth, Atty. Gen. and Joe S. Garwood, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
In this direct appeal from conviction and sentence for armed robbery, we consider whether the trial court erred in refusing to give a modified version of the standard jury instruction defining the term "weapon." We conclude that no error occurred and affirm.
Appellant was charged with armed robbery with a weapon in violation of section 812.13(2)(b), Florida Statutes, arising out of the following incident. At 6:10 AM on February 26, 1991, a man came to the drive-through window at a McDonald's restaurant in Jacksonville. Lampkins, who was working at the window, identified appellant as that person. He ordered a sausage biscuit, and after Lampkins told him the cost, he reached under the driver's seat and produced a gun. He pointed the gun at her and said to hurry up and give him all the money or he'd blow her brains out. According to Lampkins, he did not shoot the gun or try to get out of the car; he pointed the gun at her body, not her face; and he did not raise the gun as if to strike her with it.
Lampkins opened her cash register and gave appellant some of the money. He drove away and she told her manager what had happened. She gave a description of the vehicle he was driving to police, who apprehended appellant a short time later. The officer took an unloaded air-powered pump BB gun from the car.
Appellant requested, in writing, a special jury instruction defining the term "weapon": "A weapon is legally defined to mean any object that, under the circumstances, could be used to cause death or inflict serious bodily harm." The court declined to give that instruction, but instead gave the standard instruction, which is identical to the instruction requested except it does not include the words "under the circumstances." Appellant contends the trial court erred in failing to modify the standard jury instruction because it does not correctly state the applicable law, citing Cruse v. State, 588 So.2d 983 (Fla. 1991), and Yohn v. State, 476 So.2d 123 (Fla. 1985). See also Steele v. State, 561 So.2d 638 (Fla. 1st DCA 1990) ("[w]hile the standard jury instructions are intended to assist the trial court in its responsibility to charge the jury on the applicable law, the instructions are intended only as a guide, and can in no wise relieve the trial court of its responsibility to charge the jury correctly in each case").
During closing arguments, defense counsel argued vigorously that the BB gun was not capable of causing death or great bodily harm, rather it was an unloaded air pistol, which had been pointed at the victim's body rather than her face, and that appellant did not attempt to use the BB gun as a bludgeon, nor could he have, since he was inside his car and the victim was up in the drive-through window. Appellant contends the error in refusing to give the requested modified standard instruction defining weapon was compounded because, in its closing argument, the State argued it did not matter whether the BB gun was loaded and that nothing prevented appellant from striking the victim with the BB gun. Appellant argues that, in effect, the State informed the jury that the BB gun was per se a weapon, which is contrary to the law. Defense objections to these statements were overruled.
Appellee responds that the language "under the circumstances" added nothing to the standard jury instruction defining weapon and did not represent a change in the law. Appellee asserts that whether the BB gun was a weapon under the circumstances was a matter for the defense to present evidence on and argue to the jury, which it did.
In Depasquale v. State, 438 So.2d 159 (Fla. 2d DCA 1983), the court defined a BB gun as "an air or gas operated gun designed to expel lead or other metallic shot," and concluded such a gun is a weapon because it "possesses the capability of inflicting great bodily harm" and therefore meets the definition of deadly weapon.[1] Subsequent court *1191 decisions indicate that whether such an air or gas operated gun is a deadly weapon depends on the manner in which it is used, and whether it will be classified as a deadly weapon is a question for the jury. See Lynn v. State, 567 So.2d 1043 (Fla. 5th DCA 1990) (air pellet pistol), State v. Jeffers, 490 So.2d 968 (Fla. 5th DCA 1986) (pellet rifle), Duba v. State, 446 So.2d 1167 (Fla. 5th DCA 1984) (air pistol; whether a deadly weapon depends on manner in which used or capable of being used). But see Emschwiller v. State, 443 So.2d 488 (Fla. 2d DCA 1984). Cf. Bass v. State, 232 So.2d 25 (Fla. 1st DCA 1970) (unloaded gun can be deadly weapon; whether weapon involved is deadly to be resolved by jury). Defense counsel is entitled to argue to the jury that the BB gun is not a deadly weapon because of the manner in which it is used. Duba.
We conclude the trial court did not err in failing to modify the standard jury instruction as requested in this case. We are not convinced the addition of the general terms "under the circumstances" to the standard instruction defining "weapon" would have significantly altered the standard instruction.
AFFIRMED.
BOOTH, JOANOS and MINER, JJ., concur.
NOTES
[1] A weapon is defined by statute as any "dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or any other deadly weapon except a firearm or common pocket knife." Section 790.001(13), Fla. Stat.