789 So.2d 1059 (2001)
Alejandro GARCIA, Appellant,
v.
STATE of Florida, Appellee.
Nos. 4D00-1848, 4D00-1887.
District Court of Appeal of Florida, Fourth District.
June 13, 2001.
Rehearing Denied August 7, 2001.
Carey Haughwout, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
The trial court found that appellant violated his probation when he carried a large kitchen knife concealed in the waist band of his pants. He appeals, arguing that the knife could not be a concealed weapon because it was not being used as a weapon. We affirm.
Appellant was stopped by an officer for riding his bicycle at night without a light and for violation of a traffic control device. When the officer noticed that appellant was covering his stomach in a nervous manner, he asked appellant to put his hands down. The officer then noticed a bulge which appellant told him was a knife. The officer described the knife as a large kitchen knife with about a nine inch blade. *1060 Appellant told the officer he had found the knife on the ground and was taking it home.
Appellant was charged with violating his probation, first by carrying the knife, and second because the knife was a concealed weapon prohibited by section 790.01(1), Florida Statutes (1999).
At the revocation hearing, appellant did not testify that he found the knife, but rather that it belonged to his sister and that he had taken it without her permission to use at a barbeque at a friend's house. Appellant described it as the largest knife in a kitchen knife set.
A "concealed weapon" is defined in section 790.001(3)(a), as follows:
"Concealed weapon" means carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person.
Appellant admitted that he carried the knife in a concealed manner. "Weapon" is defined in section 790.001(13), Florida Statutes as follows:
"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
The term "dirk" has been used in our statute for over 100 years. Back then it was defined as follows:
The dirk has a pointed blade, four or five inches long, with a small handle. It is worn within the vest, by which it is completely concealed.
Oxford English Dictionary 709 (Compact ed.1991).
Appellant argues that in order for a kitchen knife to constitute a weapon, it must be being used as such, and in this case there was no evidence of such use.
In Miller v. State, 421 So.2d 746, 747 n. 1 (Fla. 4th DCA 1982), this court described a "dirk" as follows:
A dirk is a prohibited weapon. See § 790.001(3)(a), Fla.Stat. (1981). A dirk or dagger is defined as "any straight knife to be worn on the person which is capable of inflicting death, except what is commonly known as a `pocket knife.' `Dirk' and `dagger,' are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. Century Dictionary. They may consist of any weapon fitted primarily for stabbing." People v. Forrest, 67 Cal.2d 478, 62 Cal.Rptr. 766, 432 P.2d 374, 375 (1967).
In Miller the court concluded that a kitchen or steak knife, which was used to pry a radio out of the victim's car during a robbery, was not a deadly weapon, but could constitute a weapon to support the lesser included offense of robbery with a weapon.
In Nystrom v. State, 777 So.2d 1013 (Fla. 2d DCA 2000), the defendant had been observed sitting in his parked car in a residential neighborhood for an extended time. A citizen became concerned and called the police, who discovered, during an encounter, a steak knife with a four and three quarter inch blade in the defendant's front pocket. As a convicted felon, defendant was charged with carrying a concealed weapon.
Defendant's explanation was that earlier in the day he had cooked a steak for himself in the common kitchen of the boarding house where he lived and, after eating, had placed his steak knife and fork in his pocket so he could carry his plate and drink up to his room. He was then evicted by his land lady and quickly packed his things into garbage bags. At the time he was found by the officer he was sitting in his car trying to decide where to go and what to do.
The issue on appeal in Nystrom was whether the jury instructions were correct, and in order to sustain the conviction, the *1061 state argued that as a matter of law the steak knife was a "dirk." The court rejected that argument, stating:
We cannot hold that a steak knife is a "deadly weapon" as a matter of law. Although, as a matter of fact, a kitchen or steak knife can be used to inflict death, the carrying of one in a concealed manner is neither per se lawful nor per se unlawful. Instead, the jury, as trier of fact, must determine whether the accused is guilty of the crime based upon the particular knife involved and the circumstances surrounding the accused's carrying of it. See State v. A.D.H., 429 So.2d 1316 (Fla. 5th DCA 1983); Gooch v. State, 652 So.2d 1189 (Fla. 1st DCA 1995). (footnote omitted.)
Id. at 1015. The court reversed for a new trial, making the following observation in a footnote:
It would seem that this statute could be improved if it contained a definition of "knife." Admittedly, this definition is not as easy to craft as it might seem. There is probably an unavoidable gray area in which a jury must be called upon to determine whether there is criminal intent in the possession of a concealed item that may be used as a weapon. People carry knives in handbags or on their persons for many lawful reasons. A coworker bringing a cake knife to work to celebrate a birthday or a homeowner carrying a knife in a back pocket while doing yardwork should not be concerned that he or she may be treated like a criminal. Nonetheless, greater certainty about the outer limits of what is either per se legal or per se illegal would be useful.
Nystrom, 777 So.2d at 1015 n. 4.
The present case is very similar to Nystrom in that in each case there was no evidence that the knives were being used in the commission of a crime, yet the manner in which the unsheathed knives were carried was highly susceptible of injuring the carrier and thus unusual. And, their characteristics and concealment made them indistinguishable in any material way from a dirk.
We therefore conclude, as the court did in Nystrom, that, considering all of the circumstances, whether this knife was a concealed weapon was a question of fact. See also Simmons v. State, 780 So.2d 263 (Fla. 4th DCA 2001). Affirmed.
GUNTHER and FARMER, JJ., concur.