877 So.2d 893 (2004)
Aaron HOLLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-3078.
District Court of Appeal of Florida, First District.
July 20, 2004.
*894 Nancy A. Daniels, Public Defender; and M.J. Lord, Assistant Public Defender, Tallahassee, for Appellant.
*895 Charlie Crist, Attorney General; and Charlie McCoy, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
Aaron Holley (Appellant) contends that the trial court erred in 1) denying motions for judgment of acquittal (JOA) on the charge of robbery with a deadly weapon because a box cutter/razor knife is not a "deadly weapon" or even a "weapon" as a matter of law, and no factual evidence was presented that he used, or threatened to use, a box cutter/razor knife as such; 2) permitting irrelevant testimony (over an objection) and allowing a lay witness to give expert testimony; 3) permitting, and participating in, the State's frequent interruption of defense counsel during opening statement and closing argument, possibly suggesting to the jury that the court did not care for the defense's argument; and 4) failing to conduct an adequate inquiry upon being informed that Appellant was generally dissatisfied with his court-appointed lawyer and had implied that he should represent himself. Concluding that the evidence is legally insufficient to support Appellant's conviction for robbery with a "weapon," we are constrained to reverse the judgment and sentence in Count One and remand with directions to the trial court to enter a judgment for unarmed robbery and to re-sentence Appellant on that count. We affirm the conviction and sentence in Count Two.
The State charged Appellant with robbery with a "deadly weapon," contrary to section 812.13(2)(a), Florida Statutes (2001) (Count One); resisting an officer without violence, contrary to section 843.02, Florida Statutes (Count Two); and possession of a concealed weapon by a felon, contrary to section 790.23(1), Florida Statutes (Count Three). Count Three was severed and subsequently nolle prossed. The State filed notice of intent to seek enhanced penalties for Appellant as a prison releasee reoffender (PRR) and habitual felony offender or habitual violent felony offender. The jury found Appellant guilty of the lesser-included offense of robbery with a "weapon" in Count One and guilty as charged in Count Two. The court adjudicated Appellant guilty, classified him as a PRR, and sentenced him to concurrent terms of 30 years (Count One) and 60 days (Count Two).
The charges arose from a May 21, 2002, incident at the Food Lion grocery store in Starke. As the store manager, Mr. Tweedy, observed the interior of the store on a surveillance video located in his elevated office, Appellant removed two cartons of cigarettes, several packets of meat, and other items from the shelves and attempted to conceal them in his clothing. After contacting the police, the store manager stepped out of his office and conversed with Appellant in an effort to stall Appellant's departure. Appellant's eyes were bloodshot, his words were slurred, and he appeared to be "under the influence of something." Noticing the meat products that protruded from Appellant's pants and the cigarette cartons that bulged in his pockets as Appellant started to leave, the store manager asked whether he could have his "product" back. Appellant then placed his hand on his left rear pocket and said he had a gun, whereupon the store manager wished him "a good day" and tried to get him away from other customers and out of the store. The store manager testified he was scared and did not want to take any chances if Appellant was armed. As the store manager followed Appellant to the exit, Appellant told him to get away, or else Appellant would shoot him with his "nine." Appellant left the store and rode his bicycle directly into a police car entering the parking lot. He ran off as the officers chased him (after *896 the store manager identified Appellant as the perpetrator). The police soon apprehended Appellant and brought him back to the Food Lion. A policeman showed the store manager certain items taken from Appellant during the search: cigarette cartons, packets of meat, candy bars, a flashlight, a pack of lighters, and a box cutter/razor knife. No gun was ever found on or around Appellant. Appellant never displayed, used, or threatened to use, the box cutter/razor knife during the incident.

I.
The theory of defense was that Appellant's acts involved nothing more than shoplifting and, possibly, "resisting detainment." He moved unsuccessfully for a JOA on the charge of robbery with a deadly weapon. The denial of a motion for JOA presents a legal issue subject to de novo review. See Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001) (en banc). In moving for a motion for JOA, Appellant admitted every conclusion, favorable to the State, that the jury might fairly and reasonably infer from the evidence. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
We must determine whether the facts adduced in the State's case support the conviction for robbery with a "weapon." Count One charged robbery with a deadly weapon. § 812.13(2)(a), Fla. Stat. (2001) (designating robbery as a first-degree felony, punishable by imprisonment for a term of years not exceeding life if, in the course of committing robbery, the defendant "carried a firearm or other deadly weapon"). "Deadly weapon" is not defined in the statutes. See Butler v. State, 602 So.2d 1303, 1304 n. * (Fla. 1st DCA 1992). Subsection (2)(b) of the robbery statute addresses offenders who, in the course of committing the robbery, carried a "weapon." "Florida courts have generally utilized the statutory definition of `weapon' provided in section 790.001(13) to determine whether a particular object constitutes a `weapon' for purposes of section 812.13(2)(b)." Williams v. State, 651 So.2d 1242, 1242-43 (Fla. 2d DCA 1995); see also Stanley v. State, 757 So.2d 1275, 1276 (Fla. 4th DCA 2000). A box cutter/razor knife is not among the specifically enumerated items in section 790.001(13), Florida Statutes (2001), which defines "weapon" as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife." As used in this statute, "other deadly weapon" has been defined by the courts to mean either 1) an "instrument which will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design and construction," Robinson v. State, 547 So.2d 321, 323 (Fla. 5th DCA 1989), or 2) "an object which is used or threatened to be used during a crime in such a way that it would be likely to cause death or great bodily harm." Butler, 602 So.2d at n.*. "An object can become a deadly weapon if its sole modern use is to cause great bodily harm." Robinson, 547 So.2d at 323. A box cutter/razor knife is not a "deadly weapon" under that definition. See id. ("A razor blade was not designed or constructed with the purpose of causing death or great bodily harm and the ordinary contemplated social use is constructive."). The other way an object can be construed as a "deadly weapon" is its particular use, or threatened use, during the crime. See Fletcher v. State, 472 So.2d 537 (Fla. 5th DCA 1985) (affirming conviction for attempted robbery with weapon, where defendant placed cold, hard object against victim's throat and said it was a razor blade). Appellant did not display, use, or threaten to use, the box cutter/razor knife during the robbery. Because the State presented no evidence that the object was used, or threatened to be *897 used, as a weapon, the trial court reversibly erred in denying the motion for JOA insofar as it related to any offense greater than unarmed robbery. See Gaines v. State, 869 So.2d 603 (Fla. 1st DCA 2004) (reversing and remanding for entry of judgment of unarmed robbery and for re-sentencing, because evidence that defendant carried drill covered with bandana during robbery was insufficient to establish that defendant carried weapon in manner likely to cause death or great bodily harm during robbery, where defendant made no threatening motion with drill toward victims, never orally threatened to shoot or harm victims, and never threatened to use drill as bludgeon or other type of weapon); Blanco v. State, 679 So.2d 792 (Fla. 3d DCA 1996); Bates v. State, 561 So.2d 1341 (Fla. 2d DCA 1990) (reversing conviction for armed robbery with deadly weapon and remanding for entry of judgment of second-degree robbery and for re-sentencing, because nut driver held by defendant under a rag as he demanded money from store clerk was not "deadly weapon" under circumstances where defendant neither used, nor threatened to use, nut driver in violent way but merely stated that he was holding a gun).

II.
In his next issue, Appellant argues that the trial court abused its discretion, first, in permitting the store manager's irrelevant testimony (over relevance objections) and, second, in allowing the store manager to give expert testimony. The court allowed the store manager to testify from personal experience that he still would have been fearful had he known that the purported gun Appellant carried was actually a box cutter/razor knife. The store manager testified from personal experience that a razor knife can hurt someone, and he opined that "[a] razor knife can kill you just as fast as a gun or knife." The jury already had heard that the store manager was placed in fear because of Appellant's indication that he had a gun and would shoot him. Therefore, allowing the witness to give this cumulative testimony is nothing more than harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The specific argument that a lay witness was improperly allowed to give expert opinion testimony was not raised and preserved in the trial court. See § 924.051(1)(b), Fla. Stat. (2002); Tillman v. State, 471 So.2d 32, 35 (Fla.1985); State v. Cornuz, 816 So.2d 827 (Fla. 3d DCA 2002).

III.
Appellant asserts that the trial court erred in permitting and participating in the constant interruption of defense counsel during opening statement and closing argument, possibly suggesting to the jury that the judge did not care for the defense's arguments. Our review of the opening statement and closing argument reveals that the State's objections were "invited" by defense counsel's repeated failure to heed the trial court's reasonable instructions to avoid digressions and simply set out what the evidence would show (or had shown). When the prosecutor repeatedly objected to defense counsel's lengthy digressions, the trial court properly reminded counsel of its admonitions not to exceed the bounds of appropriate, relevant commentary. In fact, defense counsel's repetitious remarks in opening statement prompted one juror spontaneously to comment aloud (and inappropriately) that the same point had been made three times. Appellant has not shown an abuse of discretion in the court's rulings.

IV.
Finally, Appellant argues the trial court failed to conduct an adequate inquiry *898 upon receiving notice that Appellant was dissatisfied with his court-appointed attorney. We find no abuse of discretion in the court's response. "[A]s a practical matter, the trial judge's inquiry can only be as specific as the defendant's complaint." Morrison v. State, 818 So.2d 432, 440 (Fla.2002). This issue was first raised after the guilty verdict and before sentencing in defense counsel's written "Motion to Determine Defendant's Ability to Self Represent." The motion alleged generally 1) that Appellant "has consistently appeared to be dissatisfied with the efforts of [defense counsel]" and "appears more dissatisfied with [defense counsel] than ever," and 2) that Appellant "implies that he should represent himself."
The first ground alleged in counsel's motion is facially insufficient. See Cummings-El v. State, 863 So.2d 246, 255 (Fla.2003) (finding defendant's "general allegations of dissatisfaction" with court-appointed counsel did not constitute express allegation of lawyer incompetence); Davis v. State, 703 So.2d 1055 (Fla.1997) (holding that defendant was not entitled to inquiry on whether to discharge court-appointed counsel, even though defendant expressed dissatisfaction with his lawyer before trial, where defendant did not make unequivocal request to discharge attorney and his "motion to discharge" was ambiguous, at best); Branch v. State, 685 So.2d 1250, 1252 (Fla.1996) (finding no need for further inquiry where defendant's comments constituted "a general complaint, not a formal allegation of incompetence"); Comer v. State, 730 So.2d 769 (Fla. 1st DCA 1999). As to the second ground in the motion, the mere implication that a defendant should represent himself is facially insufficient. See Davis, 703 So.2d at 1059; Kearse v. State, 605 So.2d 534, 537 (Fla. 1st DCA 1992) (stating that a criminal defendant's request to proceed pro se must be "clear and unequivocal"). Thus, the allegations are insufficient to trigger the need for an inquiry under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), and Hardwick v. State, 521 So.2d 1071 (Fla.1988), and their progeny on the issue of defense counsel's competency, or to require further questioning under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), regarding whether Appellant wished to proceed pro se.
We AFFIRM the conviction and sentence for resisting an officer without violence, REVERSE the conviction and sentence for robbery with a weapon, and REMAND for the trial court to impose judgment and to re-sentence Appellant for unarmed robbery pursuant to section 812.13(2)(c), Florida Statutes (2001), in Count One.
KAHN and WEBSTER, JJ., concur.