900 So.2d 710 (2005)
Anthony SANTIAGO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-773.
District Court of Appeal of Florida, Third District.
April 27, 2005.
Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and William J. Selinger, Assistant Attorney General, for appellee.
Before GERSTEN, FLETCHER, and ROTHENBERG, JJ.
*711 ROTHENBERG, Judge.
The defendant, Anthony Santiago, was convicted after a jury trial for the offenses of car-jacking, armed burglary with a dangerous weapon, and petit theft. Santiago's defense at trial was misidentification. The only issue raised on appeal is whether the trial court erred in permitting the jury to consider whether the BB gun the defendant used in the commission of the burglary was a dangerous weapon. As there was competent and substantial evidence upon which the jury could conclude that the weapon involved was a dangerous weapon, we affirm.
While the victim, Ms. Polisar, was talking on a pay phone, a man, who she later identified as the defendant, picked up an adjacent pay phone, lifted up his shirt displaying a gun in the waistband of his pants, pulled it from his waistband and pointed it at her saying: "the gun is loaded and I'll use it, now open the car." The defendant's female companion shoved Ms. Polisar and drove off in a Jeep Cherokee, while the defendant fled in Ms. Polisar's vehicle. Ms. Polisar, whose vehicle was equipped with a LoJack device, immediately notified the police, who picked up the signal and located the defendant standing near the stolen vehicle. After the defendant was taken into custody, Ms. Polisar's keys and other personal items were found in a "fanny pack" which the defendant identified as his. Additionally, Ms. Polisar identified the defendant from a photographic lineup. The weapon which was recovered and introduced into evidence was a BB gun.
The defendant argues that there was insufficient evidence, as a matter of law, for a jury to conclude that the weapon used in the commission of the burglary was a dangerous weapon. While the weapon was introduced at trial, no one testified that the gun was loaded, that it was operational, or what type of injury it could have caused had it been fired.
Whether a weapon, and specifically whether a BB gun, is a deadly or a dangerous weapon, is clearly a question for the jury. Dale v. State, 703 So.2d 1045, 1047 (Fla.1997); Goswick v. State, 143 So.2d 817, 820 (Fla.1962) ("Whether or not the weapon involved is to be classed as `deadly' is a factual question to be resolved by the jury . . . ."), receded from on other grounds, State v. Smith, 240 So.2d 807 (Fla.1970). The jury's finding will be sustained on review if it is supported by competent substantial evidence. Dale, 703 So.2d at 1047.
Although there was no evidence that the gun was loaded or that it was operable, the failure to present any evidence on these issues, is not dispositive. In Mitchell v. State, 698 So.2d 555 (Fla. 2d DCA 1997), the defendant's convictions for robbery and aggravated assault with a deadly weapon were upheld, despite the fact that the BB gun was unloaded. Likewise in Dale, a gas-operated BB or pellet gun was found to be a deadly weapon even though the weapon was unloaded and did not contain a gas cartridge. However, if the weapon is not introduced at trial where it may be inspected and tested by the jury or if the evidence introduced is that the gun was inoperable, then a finding that the weapon is a deadly weapon will not be sustained. See E.S. v. State, 886 So.2d 311 (Fla. 3d DCA 2004) (BB gun was not a deadly weapon since it was incapable of being fired); Jones v. State, 869 So.2d 1240, 1242 (Fla. 4th DCA 2004) (BB gun used in a robbery did not constitute a deadly weapon where the gun was not produced at trial and the only evidence introduced as to its capacity to injure was the defendant's testimony that it "couldn't hurt a fly.").
*712 While there was no testimony that the BB gun used by the defendant to commit the burglary, herein, was loaded, the weapon itself was introduced and the jury had an opportunity to examine it to determine if it was capable of causing great bodily harm or serious injury. Moreover, there was no evidence introduced which established or even suggested that it was inoperable, thus distinguishing this case from the cases of E.S. and Jones.
Additionally, a jury may conclude that a weapon is either a dangerous or a deadly weapon where the defendant's words or his actions imply that the weapon is dangerous or deadly. Dale v. State, 703 So.2d at 1047 (conviction for armed robbery with a deadly weapon upheld where defendant entered a store, told the clerk "I got a gun" and raised his shirt displaying what looked like a .9mm Beretta pistol, but which was in fact an unloaded gas-operated BB or pellet gun with no gas or cartridge.); Mitchell v. State, 698 So.2d at 557 (evidence that the defendant handled a BB gun, which looked like a .22-caliber semi-automatic pistol, as if it was loaded and operable was sufficient to sustain convictions for robbery and aggravated assault with a deadly weapon even though the BB gun was not loaded).
The evidence in the case before us is more compelling than the evidence in either Mitchell or Dale. The defendant lifted up his shirt to display the gun tucked into his waistband, pulled the BB gun out from his waistband, pointed it directly at Ms. Polisar, who was only ten feet away, and told her "the gun is loaded and I'll use it, now open the car." The gun was introduced at trial and, therefore, available for inspection by the jury. There was no evidence or even a suggestion that the gun was inoperable. The defendant's actions and words implied, as in Mitchell, that the gun he was brandishing was dangerous. The victim was certainly in no position to question its ability to inflict serious harm upon her, just as she was in no position to question whether the defendant was telling her the truth when he told her it was loaded, or whether he actually would shoot her if she did not comply with his demands. While the victim was not able to discern that the weapon was a BB gun, even if she had been able to, BB guns fired at that range can inflict serious bodily harm and be can be deadly or dangerous weapons.
Affirmed.