COLBATH, JEFFREY, Associate Judge.
Gary Coultas, the Defendant below, was charged with possession of a false driver’s license or identification card, grand theft, petty theft, and carrying a concealed weapon. At the time of these new offenses, Coultas was on probation, and these new charges formed the basis for an affidavit of violation of probation. Coultas filed two motions to suppress evidence. The initial motion to suppress challenged the legality of the stop. In the second motion, the Defendant argued the physical evidence was subject to suppression because it was found as the product of an inventory search following his arrest and his arrest was not supported by probable cause. Specifically, police arrested the Defendant for carrying a concealed weapon and the Defendant argued that the item found on his person was a butter knife that did not meet the statutory definition of a “concealed weapon.” The motions to suppress were denied and the Defendant pled no contest to the new charges and to the VOP, reserving his right to appeal the denial of the latter motion to suppress. In this consolidated appeal from both the case involving the new, substantive criminal charges and the VOP, the Defendant challenges the trial court’s ruling on the latter motion to suppress. We find merit in the Defendant’s argument and reverse the resulting convictions in both the substantive, criminal case and the VOP case.
During the hearings on the motions to suppress, the following facts were established. On February 10, 2004, Detective Kevin Scott, who was in plain street clothes in an unmarked car, observed the Defendant roll slowly past a house and then run a stop sign before making a U-turn. Detective Scott stopped the vehicle and, as he approached, observed the Defendant “tucking” things down behind the seat. The Defendant twice ignored Detective Scott’s command to stop, whereupon, the detective ordered him from his vehicle. As Coultas exited the vehicle, Detective Scott observed approximately one-quarter to one-half inch of the tip of a silver knife sticking out of his front pocket. The detective retrieved the knife and arrested the Defendant for carrying a concealed weap *66 on. An inventory search pursuant to the arrest yielded a fake driver’s license and stolen SunPass transponders.
The issue in this appeal is whether the knife recovered from Coultas was a “concealed weapon” as contemplated by section 790.01, Florida Statutes (2004). The statute provides “a person who carries a concealed weapon ... on or about his or her person commits a misdemeanor of the first degree.” § 790.01(1). An officer may arrest an individual for carrying a concealed weapon without obtaining a warrant provided the officer has “probable cause to believe that the offense of carrying a concealed weapon is being committed.” § 790.02, Fla. Stat.
Before addressing this issue, we note that there are no disputed factual issues concerning this knife and, therefore, there have been no factual findings made for which the trial court is entitled to deference. We therefore review the denial of the motion to suppress de novo. See, e.g., State v. Weiss, 935 So.2d 110, 115 (Fla. 4th DCA 2006). The knife in question is part of the appellate record and we have examined it. It is an ordinary, metal table knife with a rounded blunt end with the minutest degree of serration.
A “concealed weapon” is “any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon.” § 790.001(3)(a). At the time of Coultas’s February 2004 crimes, the term “weapon” was defined as “any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.” § 790.001(13), Fla. Stat.[1] Clearly, this particular table knife is not metallic knuckles, slungshot, billie, tear gas gun, chemical weapon, or other device. The only two ways this knife could be a “concealed weapon” is if it is a “dirk” or “other deadly weapon.”
A dirk is a weapon designed for stabbing. It has been defined as having “ ‘a pointed blade, four or five inches long, with a small handle. It is worn within the vest, by which it is completely concealed.’ ” Garcia v. State, 789 So.2d 1059, 1060 (Fla. 4th DCA 2001) (quoting Oxford English DiCtionahy 709 (Compact ed.1991)); see also Miller v. State, 421 So.2d 746 (Fla. 4th DCA 1982). The table knife in question is clearly not designed for stabbing nor is it well suited for that purpose. We hold that this knife is not a dirk. We note that other types of ordinary table knives could fit the definition of a dirk. See, e.g., Garcia, 789 So.2d at 1061-61; Caldwell v. State, 920 So.2d 727, 730 (Fla. 5th DCA 2006); State v. Walthour, 876 So.2d 594, 597 (Fla. 5th DCA 2004).
The question that remains is: Does this knife qualify as an “other deadly weapon?” There are two ways in which an item can be found to meet the statutory definition of a “deadly weapon.” First, the item can qualify as a deadly weapon if it “will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design and construction.” Robinson v. State, 547 So.2d 321, 323 (Fla. 5th DCA 1989); see also Holley v. State, 877 So.2d 893, 896 (Fla. 1st DCA 2004). The knife in question was neither designed nor constructed to cause death or great bodily harm, nor is it well suited for that purpose. It was designed to cut prepared food on a plate.
*67 The second way an item can be deemed a deadly weapon is if it is used in a threatening manner. This could include any ordinary household item. See Robinson, 547 So.2d at 328; see also State v. Tremblay, 642 So.2d 64 (Fla. 4th DCA 1994). The record is clear that the knife was never displayed or used in a threatening manner. Here, the knife in question fails to meet either definition of a deadly weapon.
Based on the holdings above, we reverse the trial court’s denial of Coultas’s motion to suppress. We remand this case to the trial court for further actions consistent with this opinion.

Reversed and Remanded.

STONE and TAYLOR, JJ„ concur.

. We note that, effective July 1, 2006, and after the dates relevant for purposes of this appeal, chapter 790’s definition of the term "■weapon” was amended and now provides: " 'Weapon' means any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife.” § 790.001(13), Fla. Stat. (2006).