EMAS, J.,
dissenting.
I respectfully dissent, because our decision in E.S. v. State, 886 So.2d 311 (Fla. 3d DCA 2004) requires reversal. I believe the trial court erred in denying the motion for judgment of dismissal, as there was no competent substantial evidence to establish that the pellet gun in M.M.’s possession was a “deadly weapon.” Therefore, the charge of possession of a weapon on school grounds cannot be sustained.
The State filed a delinquency petition alleging M.M. possessed a weapon on school grounds, in violation of section 790.115(2)(a), Florida Statutes (2011). That section provides:
A person shall not possess any firearm, electric weapon or device, destructive device, or other weapon as defined in s. 790.001(13), including a razor blade or box cutter, except as authorized in support of school-sanctioned activities, at a school-sponsored event or on the property of any school....
(Emphasis added).
Because a pellet gun is not one of the specifically enumerated items under the statute, it can qualify under the statute only if it falls within the catchall category of “other weapon” as defined by section 790.001(13), Florida Statutes (2011), which provides:
“Weapon” means any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife.
(Emphasis added).
Thus, in order to sustain the charge of possession of a weapon on school grounds, the statute requires the State to prove that the pellet gun in M.M.’s possession was not simply a “weapon,” but a “deadly weapon.” A “deadly weapon” is defined as “one likely to produce death or great bodily injury.” Dale v. State, 703 So.2d 1045, 1047 (Fla.1997); Goswick v. State, 143 So.2d 817, 820 (Fla.1962), receded from on other grounds by State v. Smith, 240 So.2d 807 (Fla.1970).
At the adjudicatory hearing, the only evidence presented on this issue was the testimony of Officer Ferguson, a member of the Miami-Dade Schools Police Department. Officer Ferguson found and retrieved the pellet gun from M.M.’s backpack. The sum and substance of the *248 officer’s testimony regarding the pellet gun is as follows:
— When he initially retrieved the weapon from the backpack, he thought it was a firearm;
— He soon determined it was a pellet gun;
— He has “very little” familiarity with pellet guns, although he has fired a pellet gun in the past;
— He does not know whether the gun found in M.M.’s backpack was actually a pellet gun or a BB gun;
— Pellet guns “shoot projectiles”;
— Those projectiles are “capable of injuring people”;
— The pellet gun was not loaded when he discovered it in M.M.’s backpack; and
— He did not test-fire the pellet gun and didn’t know whether it was “functional.”
The pellet gun was introduced into evidence at the hearing, and, at the close of the evidence, M.M. moved for a judgment of dismissal, arguing that the State failed to prove the pellet gun was a “deadly weapon.” The trial court denied the motion and ultimately found the evidence sufficient to establish that the gun was a deadly weapon, thus adjudicating M.M.
We review de novo the trial court’s denial of a motion for judgment of dismissal. C.W. v. State, 76 So.3d 1093 (Fla. 3d DCA 2011). The finding that the pellet gun was a deadly weapon will be sustained on review if there is competent substantial evidence to support the finding. Dale, 703 So.2d at 1047.
Officer Ferguson’s testimony fails to provide the requisite competent substantial evidence that the pellet gun was “likely to produce death or great bodily injury.” The only testimony in this specific regard was that the pellet gun shoots projectiles and the projectiles are capable of injuring people.
The evidence introduced in this case is indistinguishable from the evidence held insufficient in E.S. In E.S., the juvenile was found in possession of a BB gun, and was charged with the offense of carrying a concealed weapon. In E.S., as in the instant case, the State was required to prove the gun was a “deadly weapon”; that is, a weapon which is “likely to cause death or great bodily injury.” The arresting officer’s testimony at the adjudicatory hearing established:
— The BB gun looked “like a .45 or a semi-auto .45” firearm;
— The BB gun was “capable of inflicting injury” when operated properly;
— No C02 cartridges or ammunition were found when the BB gun was seized.
— In E.S. (as in the instant case), the BB gun was introduced into evidence.
The Court in E.S. began its analysis by recognizing the general rule: “Whether or not the weapon involved is to be classed as ‘deadly’ is a factual question to be resolved by the jury under appropriate instructions.” E.S., 886 So.2d at 312 (quoting Dale, 703 So.2d at 1047). Notwithstanding this general rule, there must be competent, substantial evidence to support a finding that the weapon was a deadly weapon. Dale, 703 So.2d at 1047. In E.S., we determined that the evidence presented failed to meet this burden:
At trial, although the BB gun was introduced into evidence, there was no testimony regarding its operation. The evidence showed that the gun had no cartridge in it and could not discharge pellets. The only evidence regarding the gun’s ability to injure was the police officer’s testimony that the gun was *249 “capable of inflicting injury ... [if] properly operated.” Thus the evidence taken as a whole, failed to support a factual determination that the BB gun in question was “likely to produce death or great bodily injury.” Dale v. State, 703 So.2d at 1045.
E.S., 886 So.2d at 311 (underscore emphasis added).
As was the evidence in E.S., the material testimony in the instant case is insufficient as a matter of law to support a finding that the pellet gun was a “deadly weapon,” because the only evidence regarding the pellet gun’s ability to injure was that the projectiles are “capable of injuring people.” The trial court thus erred in denying the motion for judgment of dismissal. Accord L.M. v. State, 77 So.3d 720 (Fla. 3d DCA 2011); K.C. v. State, 49 So.3d 841 (Fla. 4th DCA 2010). Compare J.T. v. State, 47 So.3d 934, 935 (Fla. 4th DCA 2010) (holding there was sufficient evidence to establish the BB gun possessed by juvenile on school property qualified as “deadly weapon” where officer testified how the gun operates and that a BB pellet shot from the gun “could put someone’s eye out”).
The majority relies for affirmance on Santiago v. State, 900 So.2d 710 (Fla. 3d DCA 2005). Santiago, however, is distinguishable from the instant case and E.S. In Santiago, the defendant was charged with, and convicted of, carjacking and armed burglary of a vehicle with a “dangerous weapon.”[1] The issue on appeal was “whether the trial court erred in permitting the jury to consider whether the BB gun used in the burglary was a ‘dangerous weapon.’ ” Id. at 711. In affirming the convictions, this Court relied, at least in part, on the fact that “a jury may conclude that a weapon is either a dangerous or a deadly weapon where the defendant’s words or actions imply that the weapon is dangerous or deadly.” Id. at 712. Such a consideration was proper in Santiago because the defendant was charged with using (or threatening to use) a deadly weapon in the commission of a felony (i.e., a burglary and carjacking). Where the offense charged involves use of a weapon in the commission of another felony, the fact-finder may 'consider, in its determination of whether that weapon is a “deadly weapon,” the manner in which the defendant threatened or intended to use that weapon. See, e.g., Dale, 703 So.2d at 1047 (affirming conviction for armed robbery with a deadly weapon where defendant told store clerk “I got a gun” and raised his shirt to display what looked like a firearm but which turned out to be an unloaded BB gun or pellet gun).
In Santiago, the defendant pulled a gun from the waistband of his pants, pointed it at the victim and told her: “The gun is loaded and I’ll use it, now open the car.” Santiago then took the victim’s car. The gun used by the defendant turned out to be a BB gun. The Santiago court, citing Dale, recognized that in determining whether the BB gun used in the armed burglary qualified as a “deadly weapon”, the jury was entitled to consider the whether “the defendant’s words or actions implied] the weapon is dangerous or deadly.” Santiago, 900 So.2d at 712 (citing Dale, 703 So.2d at 1047). The Santiago court concluded:
The defendant’s actions and words implied ... that the gun he was brandish *250 ing was dangerous. The victim was certainly in no position to question its ability to inflict serious harm upon her, just as she was in no position to question whether the defendant was telling her the truth when he told her it was loaded, or whether he actually would shoot her if she did not comply with his demands.
Santiago 900 So.2d at 712.[2]
By contrast, in the instant case (as well as in E.S.) the juvenile was charged only with a possessory offense (here, possession of a weapon on school property; in E.S., carrying a concealed weapon) and was not charged with using the weapon in the course of committing another felony. Pos-sessory weapons offenses differ in this material respect from offenses involved in cases such as Santiago and, to the extent that Santiago relied on evidence of the defendant’s intended or threatened use of the weapon, that decision is inapplicable.[3] E.S. is on all fours and requires reversal.
I recognize the alarming trend of juveniles bringing weapons onto a school campus, and share the concern that such actions threaten the safety of students and staff. However, the solution to this growing problem is vested in the legislature, not the judiciary. Under the statutory framework that currently exists, the express language of the statute, and our own precedent, the State failed to provide competent, substantial evidence that the pellet gun in M.M.’s possession was a “deadly weapon” as defined by section 790.001(13), and therefore cannot sustain a conviction for possession of a weapon on school grounds under section 790.115.
I would reverse the adjudication and remand with directions to enter a judgment of dismissal on the charge of possession of a weapon on school grounds.

. The terms “dangerous weapon” and "deadly weapon” are used interchangeably in this area. See Jones v. State, 885 So.2d 466 (Fla. 4th DCA 2004); King v. State, 779 So.2d 466 (Fla. 2d DCA 2000).

. See also Fla. Std. J. Inst. (Crim.) 15.1 ("A weapon is a ‘deadly weapon’ if it is used or threatened to be used in a way likely to produce death or great bodily harm.”) (Emphasis added).

. Santiago attempted to distinguish E.S., characterizing E.S. as holding that the ”BB gun was not a deadly weapon since it was incapable of being fired.” Santiago, 900 So.2d at 711. This is not the holding in E.S. Operability was not the issue. In fact, it is clear (and was clear at the time of the decision in E.S.) that the absence of ammunition or C02 cartridges is not, by itself, dispositive of the issue of whether a weapon qualifies as a deadly weapon. See, e.g., Dale, 703 So.2d at 1047; Gooch v. State, 652 So.2d 1189 (Fla. 1st DCA 1995) and cases collected. While E.S. did include the fact that the gun contained no ammunition or C02 cartridges, E.S. never concluded that the gun was incapable of being fired. Rather, the central focus was on the capability of the gun to produce death or great bodily injury. The Court in E.S. held:
The only evidence regarding the gun’s ability to injure was the police officer's testimony that the gun was "capable of inflicting injury ... [if] properly operated.” Thus, the evidence taken as a whole, failed to support a factual determination that the BB gun in question was "likely to produce death or great bodily injury.” Dale v. State, 703 So.2d at 1045.”
E.S., 886 So.2d at 312. Where the only testimony regarding the nature and capacity to cause harm is that the weapon is "capable of inflicting injury” (as in E.S.) or "capable of injuring people” (as here) such evidence is simply insufficient to sustain a finding that the weapon is "likely to produce death or great bodily injury.”