703 So.2d 1045 (1997)
Curtis DALE, Petitioner,
v.
STATE of Florida, Respondent.
No. 87691.
Supreme Court of Florida.
October 23, 1997.
Rehearing Denied January 9, 1998.
*1046 Nancy A. Daniels, Public Defender and Kathleen Stover, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Bureau Chief, Criminal Appeals and Jean-Jacques Darius, Assistant Attorney General, Tallahassee, for Respondent.
SHAW, Justice.
We have for review Dale v. State, 669 So.2d 1112 (Fla. 1st DCA 1996), wherein the district court certified:
Can a jury permissibly find a BB gun to be a deadly weapon and a defendant guilty of armed robbery when the evidence shows that the BB gun was found unloaded, without a CO2 cartridge, and no evidence was presented that the BB gun was loaded at the time of the offense, where the defendant stated simply "I have a gun" during the commission of the robbery?
Id. at 1113. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and approve Dale.
Curtis Dale entered a bread store and pretended to buy a loaf of bread, but when the clerk opened the cash register, Dale said, "I got a gun," raised his shirt, and showed a black object. After taking the money, Dale threatened, "You call anybody, I will be back." He was arrested shortly later and police recovered a gas-operated BB or pellet gun, resembling a .9 mm Beretta pistol, hidden at a friend's house with other items from the robbery. The gun was in working order, but was without BBs, pellets, or a gas cartridge. Dale was convicted of armed robbery with a deadly weapon, and the district court affirmed, certifying the above question.
Dale contends that a BB gun "is not a deadly weapon per se," and that "on the deadly weapon continuum, a BB gun is more like a toy gun or fake gun." The State, on the other hand, argues that a BB gun is a deadly weapon.[1]
Section 812.13, Florida Statutes (1995), defines the crime of robbery, and provides in relevant part:
(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in [the penalty statutes].
(b) If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree, punishable as provided in [the penalty statutes].
(c) If in the course of committing the robbery the offender carried no firearm, deadly weapon, or other weapon, then the robbery is a felony of the second degree, punishable as provided in [the penalty statutes].
§ 812.13, Fla. Stat. (1995).
Although section 812.13 fails to define the terms "firearm" and "weapon," the definitions for these terms contained in the Florida Standard Jury Instructions are a correct statement of the law:
A "firearm" is legally defined as (adapt from F.S. 790.001 as required by allegations).[[2]] *1047 ....
A "weapon" is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.
Fla. Std. Jury Instr. (Crim.) 156(a). Whether a particular "weapon" is in fact deadly is a jury question:
A "deadly weapon" has generally been defined to be one likely to produce death or great bodily injury. Whether or not the weapon involved is to be classed as "deadly" is a factual question to be resolved by the jury under appropriate instructions.
Goswick v. State, 143 So.2d 817, 820 (Fla. 1962), receded from on other grounds, State v. Smith, 240 So.2d 807 (Fla.1970).
The issue posed here is whether the "deadliness" of a BB gun is properly a jury question, or whether a BB gun is so innocuous that it is always a non-deadly weapon as a matter of law. Our review of pertinent caselaw reveals that Florida's district courts have overwhelmingly concluded that a BB or pellet gun can be a deadly weapon, and that the issue of "deadliness" is a jury question.[3] We agree with the district courts and hold that whether a BB or pellet gun is a deadly weaponi.e., whether it is "likely to produce death or great bodily injury"is a factual question to be answered by the jury in each case. Goswick, 143 So.2d at 820. The jury's finding will be sustained on review if supported by competent substantial evidence.
In the present case, the jury had a sufficient basis for concluding that Dale's weapon was deadly. Of key importance is the fact that the jury had an opportunity to view the weapon first-hand. Further, Officer Stone testified concerning the circumstances under which the gun was found and the condition it was in when found, and Investigator Corder showed the jury in detail how the gun operated. The fact that the gun was recovered without BBs, pellets, or gas cartridge is not dispositive.[4] Competent substantial evidence supports the jury's finding.
We answer the certified question in the affirmative and approve Dale.
It is so ordered.
KOGAN, C.J., and HARDING, WELLS and ANSTEAD, JJ., concur.
GRIMES, J., concurs with an opinion.
OVERTON, J., dissents with an opinion.
GRIMES, Justice, concurring.
I agree with Justice Overton that how a weapon was used during a robbery is irrelevant to the determination of whether or not it can be characterized as a deadly weapon and that the standard jury instruction should be corrected to this extent. I can also visualize circumstances in which a trial judge may properly hold, as a matter of law, that a particular weapon was not a deadly weapon. In most cases, however, the issue must be decided by the jury, and in this case, I cannot say that the judge erred in permitting the jury to conclude that the BB gun was a deadly weapon.
OVERTON, Justice, dissenting.
I dissent.
This case is not about whether this defendant should be convicted and sentenced for robbery. It is about the maximum length of *1048 the sentence that can be imposed for such a conviction.
If a defendant does not carry a weapon during the commission of a robbery, the offense is a second-degree felony that carries a maximum term of fifteen years' imprisonment.
If a defendant carries a "weapon" during the commission of a robbery, the offense is a first-degree felony that carries a maximum term of up to thirty years' imprisonment.
If a defendant carries a firearm or other "deadly weapon" during the commission of a robbery, the offense is a life felony, which carries a maximum sentence of life imprisonment.
As explained below in more detail, I believe that, under the robbery statute, the term "weapon" should be defined as an instrument "capable" of causing death or serious bodily harm, and the term "deadly weapon" should be defined as an instrument "likely" to cause death or serious bodily harm. In my view, carrying an unloaded BB or pellet gun, such as the one carried by the defendant in this case, falls, as a matter of law, in the category of a weapon that is "capable" of causing serious bodily injury and harm. It is unreasonable and illogical and makes no legal sense to place a BB or pellet gun in the same category as a firearm (such as a .38, .45, or a .9 millimeter pistol or a sawed-off shotgun) or a deadly weapon (such as an explosive device, chemical weapon, tear gas gun, billie club, metallic knuckles, or large knife), which represent weapons that are "likely" to cause death or bodily harm.
In finding a BB or pellet gun to be a deadly weapon, the majority has totally blurred the categories of deadly weapon and weapon and has provided an absurd result when we compare the majority's holding in this case to cases involving somewhat similar situations. For instance, we recently held, consistent with an attorney general opinion, that a pocketknife with a blade no longer than four inches is not a weapon at all given that a common pocketknife is excluded from the statutory definition of the term "weapon."[5] Applying that finding here, a robbery committed with a pocketknife that has a blade of four inches when closed but has a total length of eight inches when open would be a second-degree felony because no "weapon" was carried; but a robbery committed with an unloaded BB or pellet gun stuck in a defendant's belt is a life felony. How does this make any reasonable or logical sense?
I recognize that in failing to provide a definition for the terms "weapon" and "deadly weapon" in the robbery statute, the legislature has placed this Court in the position of having to do so. The problem in attempting to define these terms becomes apparent when reviewing the available definitions. For instance, in section 790.001, Florida Statutes (1995) (weapons and firearms), the term "weapon" is defined as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife." (Emphasis added.) Thus, a weapon itself is defined to include a "deadly weapon."
On the other hand, at common law a deadly weapon was defined as one likely to cause death in the manner used, whereas a weapon was defined as one capable of causing death. This Court adopted these definitions in Pittman v. State, 25 Fla. 648, 6 So. 437 (1889); Blige v. State, 20 Fla. 742 (1884). The standard jury instruction definitions are consistent with those used at common law. Standard Jury Instructions in Criminal Cases, 665 So.2d 212, 217 (Fla.1995)("A weapon is a `deadly weapon' if it is used or threatened to be used in a way likely to produce death or great bodily harm." "A `weapon' is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.")(emphasis added). Both the common law definitions and the standard jury instruction definitions depend on the manner in which the object was used. Under the robbery statute, however, the use of the object is irrelevant; the test is whether the object was carried. See, e.g., Bentley v. State, 501 So.2d 600 (Fla.1987) (the legislature did not *1049 intend to require a finding that a handgun be operational in order to uphold a conviction of robbery with a firearm); State v. Baker, 452 So.2d 927, 929 (Fla.1984) ("[T]he statutory element which enhances punishment for armed robbery is not the use of the deadly weapon, but the mere fact that a deadly weapon was carried by the perpetrator. The victim may never even be aware that a robber is armed, so long as the perpetrator has the weapon in his possession during the offense.").
The majority in this case relies on the definitions contained in the standard jury instructions. I agree that the proper definition for the terms at issue, as set forth in those instructions, depends on whether an object is likely to cause or capable of causing serious bodily injury or death. As explained above, however, because the standard instructions also rely on the manner in which the object is used and because the "use" of the object is irrelevant under the robbery statute,[6] I would view the issue as one of law rather than one of fact for the jury under the circumstances presented here by our robbery statute.
As a matter of law, I would conclude that a BB or pellet gun is not a "deadly weapon" because it is not likely to produce death or serious bodily injury but that it is a "weapon" because it is capable of producing death. See State v. Houck, 652 So.2d 359 (Fla.1995) (as a matter of law paved surface is not a weapon). Accordingly, I would remand this case with directions that Dale's conviction for robbery with a deadly weapon be reduced to robbery with a weapon, a first-degree felony, and that he be resentenced accordingly. I would also encourage the legislature to reevaluate the robbery statute and to provide definitions for the terms used therein.
NOTES
[1] The parties do not argue, and we do not decide, whether a BB gun is a firearm.
[2] Section 790.001 defines "firearm" thusly: "Firearm" means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime.

§ 790.001(6), Fla. Stat. (1995).
[3] See, e.g., Dale v. State, 669 So.2d 1112 (Fla. 1st DCA 1996) (whether a BB gun is a deadly weapon is a jury question); Gooch v. State, 652 So.2d 1189 (Fla. 1st DCA 1995) (whether a BB gun is a deadly weapon is a jury question); State v. Jeffers, 490 So.2d 968 (Fla. 5th DCA 1986) (whether a pellet gun is a deadly weapon is a jury question); Duba v. State, 446 So.2d 1167 (Fla. 5th DCA 1984) (whether a BB gun is a deadly weapon is a jury question). See also Lynn v. State, 567 So.2d 1043 (Fla. 5th DCA 1990) (a pellet pistol can be a deadly weapon); In re W.M., 491 So.2d 1263 (Fla. 4th DCA 1986) (a BB gun is a deadly weapon); Emshwiller v. State, 443 So.2d 488 (Fla. 2d DCA 1984) (a BB gun is a deadly weapon); Depasquale v. State, 438 So.2d 159 (Fla. 2d DCA 1983) (a BB gun can be a deadly weapon).
[4] Cf. Bentley v. State, 501 So.2d 600, 602 (Fla. 1987) ("Whether the gun in [the defendant's] possession was loaded or whether [the defendant] had available ammunition is irrelevant.").
[5] See L.B. v. State, 700 So.2d 370 (Fla.1997)(defining the term "common pocketknife" within the meaning of section 790.001, Florida Statutes (1995)).
[6] In this case, the trial court instructed the jury that the State had to prove Dale used a deadly weapon to be convicted of armed robbery with a deadly weapon. Further, a deadly weapon was defined "as a weapon used or threatened to be used in a way likely to produce death or great bodily harm."