869 So.2d 1240 (2004)
Kevin JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-3207.
District Court of Appeal of Florida, Fourth District.
March 31, 2004.
Rehearing Denied May 11, 2004.
*1241 Carey Haughwout, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant was convicted and sentenced for robbery with a deadly weapon, the deadly weapon being a BB gun having the appearance of a .9 millimeter hand gun. He complains that the court erred in denying his motion for judgment of acquittal on that portion of the verdict finding him guilty of being armed with a deadly weapon because the BB gun was destroyed by the state prior to trial and, thus, was not presented to the jury. The state offered no other proof to show the BB gun was likely to inflict death or great bodily harm. On the controlling authority of Dale v. State, 703 So.2d 1045 (Fla.1997), we agree with appellant and reverse his conviction.
While victim Joyce Snelten was in a rental car parking lot, a man walked up behind her, held a gun about an inch from her temple, and told her to drop her purse, before leaving in an old red vehicle. According to the victim, the gun was "frightening" and "shiny black" with a rectangular barrel. She acknowledged that she did not know what kind of a gun it was. After the gunman ripped her purse from her arm, she crouched by the side of a rental car in fear of being shot.
Officer Hatfield responded to a 911 call, and he spoke to the victim. She described the suspect, weapon, and vehicle. Another officer saw a vehicle that matched the description, watched it pull over, and saw appellant, who fit the description of the suspect, get out. The officer detained appellant until Officer Hatfield arrived with the victim who identified appellant as the man who robbed her. Officer Hatfield found a BB gun in a cooler in the front passenger's seat of appellant's car. At first he thought it was a real gun, but soon realized it was a BB gun. The evidence technician who processed all of the evidence also at first thought the BB gun was a real gun. Inside the cooler in which the BB gun was found were pellets for the gun. No one testified that the BB gun was actually loaded with pellets when found by the detectives.
Unfortunately, sometime prior to trial the gun was mistakenly destroyed by the state. At trial, after the presentation of its witnesses, the state introduced a photograph of the BB gun. It did not introduce any evidence about its operation. Appellant moved for judgment of acquittal on the ground that the state failed to demonstrate that the BB gun was a deadly weapon.
In his defense, appellant testified and denied any involvement. He said that the *1242 BB gun found in his car was a cheap spring model which "couldn't hurt a fly." He did not recall whether it was loaded at the time of the incident. After testifying, appellant renewed his motion for judgment of acquittal, which was also denied. The trial court found that the question of whether a BB gun is a deadly weapon was a question for the jury, and the jury found appellant guilty of robbery with a deadly weapon.
A motion for judgment of acquittal is reviewed under a de novo standard of review. See Mohansingh v. State, 824 So.2d 1053, 1054 (Fla. 5th DCA 2002).
In Dale, the supreme court considered "whether the `deadliness' of a BB gun is properly a jury question, or whether a BB gun is so innocuous that it is always a non-deadly weapon as a matter of law." 703 So.2d at 1047. The court said,
We agree with the district courts and hold that whether a BB or pellet gun is a deadly weaponi.e., whether it is "likely to produce death or great bodily injury"is a factual question to be answered by the jury in each case. The jury's finding will be sustained on review if supported by competent substantial evidence.
In the present case, the jury had a sufficient basis for concluding that Dale's weapon was deadly. Of key importance is the fact that the jury had an opportunity to view the weapon first-hand. Further, Officer Stone testified concerning the circumstances under which the gun was found and the condition it was in when found, and Investigator Corder showed the jury in detail how the gun operated. The fact that the gun was recovered without BBs, pellets, or gas cartridge is not dispositive. Competent substantial evidence supports the jury's finding.
Id. (emphasis added) (footnote and citation omitted). Relying on Dale, we conclude that the state did not present the type of evidence necessary to sustain a jury finding that this BB gun was a deadly weapon. The jury did not have an opportunity to view the weapon or the ammunition because the state destroyed it. No one testified or showed the jury how the BB gun operated. In short, there was no evidence from which a jury could determine whether this particular BB gun was likely to produce great bodily harm or even that it was operable. The jury could not properly rely on a picture alone to determine the deadliness of the gun. In fact, the only evidence of the BB gun's capacity to inflict injury was the appellant's testimony that the gun "couldn't hurt a fly."
Because the state failed to produce evidence of the deadliness of the BB gun, the jury's finding that the BB gun was a deadly weapon was not supported by any evidence. The conviction for robbery with a deadly weapon must be reversed and the case remanded for entry of a conviction for robbery and resentencing accordingly.
STONE and STEVENSON, JJ., concur.