STEVENSON, J.
K.C. was found guilty of possessing a BB gun on school property and adjudicated delinquent. On appeal, K.C. argues that the evidence failed to establish that his BB gun was a deadly weapon so as to bring it within the statute charged in the petition for delinquency. We agree and reverse.
K.C. was charged with violating section 790.115(2), Florida Statutes (2009), which provides, in relevant part, that “[a] person shall not possess any firearm, electric weapon or device, destructive device, or other weapon as defined in s. 790.001(13) ... on the property of any school.” A BB gun is not one of the enumerated items; thus, to fall within the scope of the statute it must qualify as an “other weapon as defined in s. 790.001(13).” See J.M.P. v. State, 43 So.3d 189, 190 (Fla. 4th DCA 2010). Section 790.001(13) defines a “weapon” as “any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon.” Since a BB gun is not one of the items enumerated in section 790.001(13), it must be a “deadly weapon” to fall within the scope of section 790.001(13) and thus within the scope of section 790.115(2). See also 43 So.3d at 190. “A ‘deadly weapon’ has generally been defined to be one likely to produce death or great bodily injury.” Dale v. State, 703 So.2d 1045, 1047 (Fla.1997).
A BB gun can constitute a “deadly weapon” and whether it is a “deadly weapon” in a particular case is a question of fact to be resolved by the trier-of-fact. Id. at 1047. The fact that a BB gun is not loaded or is recovered without pellets or ammunition is not dispositive of whether it is a “deadly weapon.” Id. In Dale, where the unloaded BB gun was found shortly after the offense, our supreme court affirmed the defendant’s conviction for robbery with a deadly weapon. There, the defendant carried the BB gun in his waistband and lifted his shirt to reveal it to the victim in the process of robbing her, threatening to return if she called police. The court found it significant that the BB gun was introduced into evidence, affording the jury the opportunity to examine it for themselves, and the State presented testimony from police witnesses that the BB gun was in working order and which demonstrated, in detail, its operation. Id.; see also T.H. v. State, 859 So.2d 549, 549 (Fla. 4th DCA 2003) (evidence sufficient to establish BB gun was a “deadly weapon,” where police officer testified BB gun can damage the eye and, if fired at close range, penetrate the skin).
Where a BB gun is not loaded, and no additional evidence is introduced to establish its capacity to inflict death or great bodily harm, the courts have held the evidence insufficient to call it a statutory “deadly weapon.” In Jones v. State, 869 So.2d 1240 (Fla. 4th DCA 2004), the defendant held a BB gun to the victim’s face and ordered her to drop her purse. This court reversed the defendant’s conviction for robbery with a deadly weapon because there was no evidence that the gun had been loaded at the time of the crime’s commission, the gun was not introduced as it was accidentally destroyed prior to trial, the State presented no evidence concerning the injury that could be inflicted by such a weapon, and the defendant testified the gun was a cheap model that “couldn’t hurt a fly.” Id. at 1241-42. In E.S. v. State, 886 So.2d 311, 312 (Fla. 3d DCA 2004), the Third District reversed a convic *843 tion for carrying a concealed weapon, finding that the evidence was insufficient to establish that the BB gun was a “deadly weapon” where the gun was introduced into evidence, but no cartridges were found and an officer testified only that the gun was “capable of inflicting injury” — to be a “deadly weapon,” the weapon must be likely to cause death or great bodily harm. And, recently, in this court reversed a conviction for possession of a weapon on school property where the BB gun was introduced into evidence, but no testimony established that the BB gun was operational, detailed how it operated, or described the injuries such a weapon might inflict. 43 So.3d at 191.
The instant case falls into the latter category of cases. While K.C.’s BB gun was introduced into evidence, there was no evidence that it was loaded and no testimony describing the BB gun’s operation or the nature and character of injuries it was capable of inflicting. The judge made a comment at the hearing concerning the BB gun’s considerable weight and observed that it might be used to pistol-whip someone. An object can qualify as a deadly weapon based upon the manner in which it is used during a crime. See J.W. v. State, 807 So.2d 148, 149 (Fla. 2d DCA 2002). Thus, when used as a bludgeon, a BB gun may qualify as a “deadly weapon.” See Mitchell v. State, 698 So.2d 555 (Fla. 2d DCA) (holding BB gun used as a bludgeon that creates a gash on victim’s head could be found to be a deadly weapon so as to support aggravated battery conviction), approved, 703 So.2d 1062 (Fla.1997); see also McCray v. State, 358 So.2d 615 (Fla. 1st DCA 1978) (noting that if gun-shaped cigarette lighter had been used as a bludgeon, then, depending on its size and weight, it might be classified as a deadly weapon). Here, the BB gun was found in the defendant’s book bag and there was no evidence that the defendant used, or threatened to use, the BB gun as a bludgeon. We thus reverse the adjudication of delinquency.

Reversed.

GROSS, C.J., and FARMER, J., concur.