PER CURIAM.
 

 Ronald Parrish appeals his conviction for child neglect and his revocation of probation based on possession of a weapon and new law violations. Parrish raises three issues on appeal, but we reverse on two, rendering the third issue moot. The trial court erred when it denied Parrish’s motion for judgment of acquittal (JOA) on the child neglect charge as there is insufficient evidence that his actions/omission created a risk of serious mental or physical injury to his child. The trial court also erred in revoking probation based on possession of a weapon as there was insufficient evidence to find that Parrish’s BB gun was a deadly weapon. We reverse and remand with instructions to vacate the child neglect conviction, resentence as to the remaining charges, and hold a new violation of probation (VOP) hearing.
 

 Child Neglect
 

 Following a jury trial, Parrish was convicted of child neglect, battery, and “resisting officer without violence.” The child neglect charge was based on two acts/omissions by Parrish: (1) his failure to order his daughter to leave during a confrontation with Officer Newberry; and (2) the condition of his home. Neither action/omission supports a conviction for child neglect.
 

 Officer Newberry was patrolling Parrish’s neighborhood when he was waved over by Tom Caldwell, a neighbor. Caldwell told him that Parrish was in his front yard beating his roommate. Caldwell also informed Newberry that, when he tried to break up the fight, Parrish went inside and retrieved a gun.
 
 [1]
 
 As Newberry waited outside Parrish’s home for back-up, Parrish walked out of his home and sat at a table underneath a carport. Newberry approached Parrish at gunpoint and ordered him to keep his hands on the table.
 

 During the confrontation, Parrish’s five-year-old daughter ran out of the house and stood in front of her father. The child cried and screamed, “Don’t hurt my daddy.” Newberry lowered his weapon and ordered Parrish to tell his daughter to go back inside. Parrish refused and said she was not going anywhere. After approximately thirty to sixty seconds of yelling back-and-forth, other officers arrived, removed the girl from the situation, and arrested Parrish.
 

 Newberry testified that throughout the confrontation Parrish kept his hands on
 
 *1032
 
 the table and was “physically compliant but verbally hostile.” Officer Newberry further testified he never pointed the gun at the girl and he immediately lowered it once she was present. When asked if the girl was “in physical harm of [him] accidentally shooting her or anything like that,” Newberry responded “[n]ot from my gun, no, sir.”
 

 The State also presented evidence regarding the condition of Parrish’s home at the time of the underlying crimes. For instance, Officer Connell testified to the following: there was no air conditioning in the house; the windows were all closed and covered with spider webs and mold; the furniture was covered with clothing and trash; the kitchen smelled like rotten food; there were moldy dishes in the sink; there was no food in the kitchen cupboards; the food in the kitchen was old and moldy; the rooms smelled like urine and feces; and the lights would not turn on even though there was electricity in the house. In addition, the floor of the child’s room was covered with clothes, trash, and dirt, and smelled like urine and mold. The couch where the girl was supposedly sleeping was covered with clothes and cobwebs, and there was no room for her to lie down.
 

 Section 827.03(3)(a)(1), Florida Statutes (2010), defines child neglect as:
 

 A caregiver’s failure or omission to provide a child with the care, supervision, and services necessary to maintain the child’s physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child.
 

 Such failure or omission may be based on repeated conduct or, as in the present case, on a “single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury [] to a child.” § 827.03, Fla. Stat.
 

 To prove child neglect, the State is required to show the defendant acted willfully or with culpable negligence in creating the situation or in allowing the questionable conditions to occur.
 
 See
 
 § 827.03(3)(c), Fla. Stat. (2010);
 
 see also Arnold v. State,
 
 755 So.2d 796, 797 (Fla. 2d DCA 2000). Moreover, the State must present evidence that the defendant’s act or omission “created a potential risk of serious — not minimal — harm to the child.”
 
 Arnold,
 
 755 So.2d at 799. Expert testimony is not required to prove the risk of mental or physical injury.
 
 Id.
 

 In the instant case, the State failed to present evidence that the condition of Parrish’s home created a potential mental or physical danger to the child. For instance, there was no evidence the child was unclothed, unsupervised or unfed. To the contrary, the child’s teacher and aunt both testified the child appeared in good health and well groomed. Even Officer Connell testified the girl was friendly and talkative. As a result, there was insufficient evidence of child neglect based on the condition of Parrish’s home.
 

 There is also insufficient evidence that the confrontation between Parrish and Newberry created a risk of serious physical or mental injury to the child. In fact, the evidence contradicts such a finding. For instance, regarding any potential physical injury, Officer Newberry specifically testified the child was not at risk of being shot. The evidence further shows Newberry lowered his weapon when the child came outside and Parrish complied with Newberry’s commands to keep his hands on the table. Thus, neither Parrish nor Newberry presented a physical threat to the child. With respect to any mental harm, the evidence presented does not establish the child suffered or could reasonably be expected to suffer “mental injury.” In other words, there is no evidence Parrish’s refusal to send his daughter inside
 
 *1033
 
 during the altercation “could reasonably be expected to result in an injury to the intellectual or psychological capacity of the child, as evidenced by a discernable and substantial impairment in the ability to function within the normal range of performance and behavior.” § 39.01, Fla. Stat (2010);
 
 see DuFresne v. State,
 
 826 So.2d 272, 278-79 (Fla.2002) (reading chapter 39 in pari materia with section 827.03 to supply a definition for “mental injury”). In fact, the evidence shows that, ten to fifteen minutes after the altercation, the child was calm, friendly and talkative.
 

 Because the State failed to present evidence that Parrish’s actions/omissions placed his child at risk of serious injury, even when considering all reasonable inferences in a light most favorable to the State, there is insufficient evidence to support a conviction for child neglect.
 

 Revocation of Probation
 

 Following the jury trial, the court held a VOP hearing in which it found Parrish violated conditions 4 and 5 of his probation. Specifically, the court held Parrish was in possession of a deadly weapon — a BB gun — and he committed new crimes while on probation. On appeal, Parrish argues, among other things, that the revocation of probation order should be reversed because the BB gun did not qualify as a deadly weapon under section 790.001(13), Florida Statutes (2010). He is correct.
 

 Section 790.001(13), Florida Statutes (2010), defines a weapon as “any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device,
 
 or other deadly weapon except a firearm or a common pocketknife,
 
 plastic knife, or blunt-bladed table knife.” (Emphasis added). A deadly weapon is one likely to cause death or great bodily injury.
 
 See Dale v. State,
 
 703 So.2d 1045, 1047 (Fla.1997). Whether or not the weapon involved is to be classified as “deadly” is a factual question to be resolved by the trier of fact.
 
 Id.
 

 The fact that a BB gun is recovered without BBs or a C02 cartridge is not dispositive of whether it is a “deadly weapon.”
 
 See Dale,
 
 703 So.2d at 1047. However, where a BB gun is not loaded, and no additional evidence is introduced to establish its capacity to inflict death or great bodily harm, courts have held the evidence insufficient to call it a “deadly weapon.”
 
 See K.C. v. State,
 
 49 So.3d 841 (Fla. 4th DCA 2010) (reversing a conviction for possession of a BB gun on school property where there was no evidence the gun was loaded and no testimony describing its operation or the nature and character of injuries it was capable of inflicting);
 
 see also E.S. v. State,
 
 886 So.2d 311, 312 (Fla. 3d DCA 2004) (reversing a conviction for carrying a concealed weapon where the BB gun was introduced into evidence, but no cartridges were found and an officer testified only that the gun was “capable of inflicting injury”).
 

 In the instant case, there was no evidence presented establishing the BB gun was functional. Moreover, the evidence showed there was no C02 cartridge or BBs in the BB gun or in the vicinity of where the BB gun was found in the home. The only evidence that might have demonstrated the BB gun was operational was Officer Newberry’s testimony recounting the battery victim’s statements to him in which the victim claimed he had been shot. However, Newberry also testified there were no marks on the victim’s skin indicating he had been shot and that the victim seemed to be intoxicated during their interview. As a result, this statement by the victim to Newberry is insufficient to establish the BB gun was operational, given that the BB gun was found without a C02 cartridge or BBs shortly after the altercation. Because there was no evidence the BB gun was operational, the court abused
 
 *1034
 
 its discretion when it found the BB gun was a “deadly weapon.” Consequently, the trial court erred when it found that Parrish violated condition 4 of his probation.
 

 Conclusion
 

 Because there was no evidence Parrish’s actions/omissions could reasonably be expected to result in serious physical or mental injury to the child, the State failed to prove every essential element of the child neglect charge. In addition, with respect to the revocation of probation, the trial court abused its discretion in revoking probation based on possession of a weapon as there was insufficient evidence to establish that the BB gun was a deadly weapon. For the foregoing reasons, we reverse and remand for the trial court to vacate the child neglect conviction, remove the unsupported violation of condition 4 from the revocation of probation order, and hold a new VOP hearing consistent with this opinion.
 

 REVERSED and REMANDED.
 

 VAN NORTWICK, PADOVANO, and HAWKES, JJ., concur.
 

 [1]
 

 . It was later discovered to be a BB gun.