SAWAYA, J.
Brandon Brown appeals his conviction for aggravated battery with a deadly weapon in violation of section 784.045(l)(a)2., Florida Statutes. He used two hollow, flimsy, plastic broomsticks as the alleged “deadly weapon.” The specific issue we must resolve is whether the broomsticks used by Brown are “deadly weapons” under this statute.
A detailed discussion of the facts and circumstances of this case is not necessary to resolve the issue before us. Suffice it to say that Brown was charged by Amended Information with sexual battery, false imprisonment, and aggravated battery with the use of a deadly weapon. The deadly weapon specifically alleged in the Amended Information to have been used by Brown is a “broom stick.” The State attempted to establish that Brown used two broomsticks to batter the victim, Brown’s former girlfriend with whom he has a child.
At the conclusion of the State’s case, defense counsel moved for a judgment of acquittal on the charge of aggravated battery, arguing that the broomsticks had not been introduced into evidence, there were no photographs of them, and that the only evidence presented by the State was that the broomsticks were flimsy, bent, and broke after one or two uses, and did not and could not inflict any kind of harm, much less great bodily harm. The trial judge denied the motion. Brown testified and admitted to hitting the victim with plastic broomsticks, but stated that they broke pretty easily after one strike. After Brown testified, the defense rested and renewed the motion for judgment of acquittal on the aggravated battery charge on the same grounds as previously argued. *571 The motion was denied. The jury returned its verdict finding Brown guilty of battery, a lesser included offense of sexual battery; not guilty of false imprisonment; and guilty of aggravated battery with a deadly weapon. Brown contends that the trial court erred in denying his motion for judgment of acquittal. Our standard of review is de novo.[1]
An essential element of the offense of aggravated battery with a deadly weapon that the State must prove beyond a reasonable doubt under section 784.045(l)(a)2. is that the object used to commit the offense is a deadly weapon. See Wolfork v. State, 992 So.2d 907, 909 (Fla. 2d DCA 2008); Thomas v. State, 932 So.2d 1221, 1224 (Fla. 5th DCA 2006); C.A.C. v. State, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000). Section 784.045, like other statutes that proscribe criminal conduct with the use of a “deadly weapon,” does not provide a definition of that term. Therefore, the courts have supplied the definition. A deadly weapon is defined as an instrument that will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design. Michaud v. State, 47 So.3d 374, 376 (Fla. 5th DCA 2010). Clearly, these broomsticks do not fit this definition. The courts further define a deadly weapon as an object that is used or threatened to be used in a way likely to produce death or great bodily harm. Id. This is the definition of deadly weapon that the State utilized to convict Brown.
The only evidence presented by the State to prove the broomsticks used by Brown were deadly weapons came from the victim, who testified, “So, next thing I know he was hitting me, beating me with them poles, but they — I mean, they was like flimsy, so they just bent right up after like five times he swung them.” She further testified that the broomsticks “bent very quick so I’d say about — he probably got a good two licks on my head ... and a couple of times on my legs.” When asked how it felt to get hit with the handles, she testified that “it just stinged. It wasn’t really painful.” The victim further testified that Brown stopped when the broomsticks bent and broke and he could not use them anymore. She told the jury that he folded them in his hand and stopped using them. On cross-examination, the victim told the jury that she received only some stinging sensations when she was hit with the broomsticks and that she did not receive any injury or medical attention for injuries sustained from being attacked with the broomsticks.
This evidence not only fails to establish that the broomsticks were deadly weapons, it clearly establishes that they are not. The broomsticks were made out of hollow plastic and were so flimsy that they bent when Brown struck the victim. The victim suffered no injury and testified that it only stung when she was struck with the broomsticks. When Brown saw he could not injure the victim with the broomsticks, he folded them in his hand and stopped using them. If there is any fact established by this testimony, it is that the broomsticks are not deadly weapons because they were not likely to cause great bodily harm. Great bodily harm under section 784.045 is distinguished from *572 slight, trivial, or moderate harm that maybe caused by a simple battery. J.L. v. State, 60 So.3d 462 (Fla. 1st DCA 2011); Chesnoff v. State, 840 So.2d 423 (Fla. 5th DCA 2003); C.A.C.
The courts have not hesitated to reverse convictions when the State fails to present competent substantial evidence that the object used is a deadly weapon. In C.A.C., the defendant was convicted of aggravated battery for stabbing the victim two or three times in the back. C.A.C., 771 So.2d at 1262. The alleged deadly weapon was a fork. Unlike the victim in the instant case who suffered no injury, the victim in C.A.C. had scratches, swelling, and puncture marks on his back inflicted with the fork, but did not require any medical treatment for his injuries. The Second District Court reversed the aggravated battery conviction and remanded with instructions to And the defendant guilty of battery. Id. at 1262-63. The court reasoned that a fork is not likely to cause death or great bodily harm when used in the ordinary manner contemplated by its design and that there was no evidence that the fork, as used by the defendant, was likely to cause great bodily harm. Id. at 1262.
Similarly in J.L., the court reversed a conviction for aggravated battery with a deadly weapon because the State failed to prove that the plastic fork used by the defendant was deadly. The court explained:
[Ojur review of the record in this case compels us to find that there was insufficient evidence to support a finding that the plastic fork used by Appellant was likely to cause great bodily harm. In reaching its conclusion, the trial court stated that it recognized the human neck’s “vulnerability,” and determined that the fork was “very sharp and very solid.” Based on these findings, the trial court concluded that “[Appellant] was lucky that he wasn’t two inches off’ because, had he been, he “could have punctured a very, very important part of [the victim’s] neck.” In doing so, the court incorrectly engaged in conjecture about what might have happened had Appellant stabbed the victim in a different part of the neck, without any evidence that this perceived potential for great bodily harm was likely based upon the actual circumstances of this case.
... Here, there was no evidence that the injury that likely would result from the way in which Appellant stabbed the victim with a plastic fork would be anything more serious than the victim’s actual injury — scratches and redness— which is the type of injury likely to ensue from a simple battery. This is not to say that under no circumstances can a plastic fork be used in such a way that it can be classified as a deadly weapon, only that those circumstances did not exist here.
J.L., 60 So.3d at 465.
In Nguyen v. State, 858 So.2d 1259, 1260 (Fla. 1st DCA 2003), the court determined that counsel may have been ineffective because he failed to move for a judgment of acquittal in a prosecution for aggravated battery with a deadly weapon, explaining:
“A deadly weapon is 1) any instrument which, when it is used in the ordinary manner contemplated by its design and construction will or is likely to cause great bodily harm, or 2) any instrument likely to cause great bodily harm because of the way it is used during a crime.” D.C. v. State, 567 So.2d 998, 1000 (Fla. 1st DCA 1990). No cases in Florida appear to have determined whether a stun gun can constitute a deadly weapon either by its ordinary use, or by the way it was used in a crime. In the instant case, the state failed to present any testimony that a stun gun qualifies as a deadly weapon by its ordinary use and there was insuffi- *573 dent evidence to establish that it was a deadly weapon in the manner it was used on this victim. Thus, it appears that there was insufficient evidence as a matter of law to support a charge of aggravated battery for the use of a deadly weapon.
In its brief, the State quotes Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984), which states that “whether or not an object is a deadly weapon is a question of fact to be determined by the jury... .”[2] However, a jury verdict must be based on sufficient evidence introduced by the State to establish that the instrument is a deadly weapon. The testimony offered at trial, which is the only evidence in the record, did not establish that Brown used the broomsticks in a way that was likely to cause great bodily harm.
Moreover, the State did not introduce into evidence the broomsticks or pictures of them. See Dale v. State, 703 So.2d 1045, 1047 (Fla.1997) (“In the present case, the jury had a sufficient basis for concluding that Dale’s weapon was deadly. Of key importance is the fact that the jury had an opportunity to view the weapon first-hand.”); Brooks v. State, 726 So.2d 341, 342 (Fla. 5th DCA 1999) (“The wooden-handled kitchen knife was entered into evidence and displayed to the jury. The jury was properly instructed as to the definition of a ‘deadly weapon’ and determined that the knife in evidence was one. Based on the facts of this case, the jury’s determination is warranted by the record.”); Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984) (“We hold that whether or not an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape and material and the manner in which it was used or was capable of being used.”); see also Jones v. State, 869 So.2d 1240, 1242 (Fla. 4th DCA 2004);[3] Simmons v. State, 780 So.2d 263, 265 (Fla. 4th DCA 2001) (quoting Duba). Because the broomsticks were not submitted into evidence and the State did not *574 introduce a picture of them, the jury did not have the ability to view the broomsticks to determine if they were of the size, shape, and material to cause serious injury as they were used by Brown. The only evidence the jury had to base its verdict on was the testimony that the broomsticks were hollow and flimsy and bent when used and that Brown stopped using them when he could not hurt the victim with them.
We conclude that the State failed to present sufficient evidence to prove that the broomsticks are deadly weapons and its argument in favor of affirmance literally begs the question of how an instrument can be a deadly weapon when the defendant stops using it because the instrument is not capable of injuring the victim. Therefore, the trial court erred in denying Brown’s motion for judgment of acquittal. Accordingly, we reverse Brown’s conviction for aggravated battery with a deadly weapon. Because the elements of battery are sufficiently alleged in the Amended Information and the State did prove that Brown committed that crime, we remand this case so the trial court can enter a judgment of conviction for battery and impose an appropriate sentence for that offense.[4]
REVERSED and REMANDED.
PALMER, and EVANDER JJ., concur.

. "Generally, an appellate court will not reverse a conviction which is supported by competent substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002) (citations omitted), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003).

. We will make one parenthetical note concerning the State's contention in this regard. The courts have held that "[wjhether or not the weapon involved is to be classified as 'deadly' is a factual question to be resolved by the jury under appropriate instructions." Dale v. State, 703 So.2d 1045, 1047 (Fla.1997) (emphasis added); see also Simmons v. State, 780 So.2d 263, 265 (Fla. 4th DCA 2001) (quoting Dale). The court in Dale stated that "[a] ‘deadly weapon’ has generally been defined to be one likely to produce death or great bodily injury." Dale, 703 So.2d at 1047 (emphasis added). Here, according to the transcript, the trial court instructed the jury that “[a] weapon is a deadly weapon if it is used, or threatened to be used in a way likely to produce death or bodily harm." The modifier “great” was omitted. Thus, the jury could have found Brown guilty of aggravated battery because he used the broomsticks in a way that was likely to cause slight or moderate bodily harm. See Stone v. State, 899 So.2d 421 (Fla. 5th DCA 2005) (holding that it cannot be assumed that the jury disregarded the erroneous oral instruction even though it was provided with a correct copy of written instructions). In any event, we need not discuss this issue further because it was not raised by the parties and because it does not form a basis for our decision in this case.

. In Jones, the court reversed a conviction for robbery with a deadly weapon because the jury verdict was not based on sufficient evidence that the robber used a deadly weapon. The court explained:
Relying on Dale, we conclude that the state did not present the type of evidence necessary to sustain a jury finding that this BB gun was a deadly weapon. The jury did not have an opportunity to view the weapon or the ammunition because the state destroyed it. No one testified or showed the jury how the BB gun operated. In short, there was no evidence from which a jury could determine whether this particular BB gun was likely to produce great bodily harm or even that it was operable. The jury could not properly rely on a picture alone to determine the deadliness of the gun. In fact, the *574 only evidence of the BB gun's capacity to inflict injury was the appellant’s testimony that the gun "couldn't hurt a fly.”
Because the state failed to produce evidence of the deadliness of the BB gun, the jury's finding that the BB gun was a deadly weapon was not supported by any evidence.
Jones, 869 So.2d at 1242.

. See Jaimes v. State, 51 So.3d 445 (Fla.2010) (holding that where the defendant was improperly convicted on the charged offense of aggravated battery, but the elements of simple battery were alleged in the charging document, supported by the proof at trial, and each element was determined by the juty beyond a reasonable doubt, the appellate court could remand the case to the trial court to direct entry of judgment on simple battery).