# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2013

No. 12-40230

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OSCAR ROMERO–ORTIZ,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-1802-1

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Oscar Romero–Ortiz ("Romero–Ortiz") pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326 and was sentenced to seventy-seven months of imprisonment. Romero–Ortiz appeals his sentence, arguing that the district court incorrectly applied a sixteen-level "crime of violence" enhancement based on his prior Florida conviction for aggravated assault. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40230

## I.

On November 15, 2011, a grand jury charged Romero–Ortiz with illegal reentry following deportation in violation of 8 U.S.C. § 1326(a). Romero–Ortiz pleaded guilty to the indictment. The pre-sentence investigation report ("PSR"), which was prepared using the 2011 edition of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), recommended a sixteen-offense-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), on the ground that Romero–Ortiz's 2003 Florida felony conviction for aggravated assault was a crime of violence. This increase, combined with a base offense level of eight and a two-level reduction for acceptance of responsibility, gave Romero–Ortiz a total offense level of twenty-two. Sixteen criminal history points placed Romero–Ortiz in a criminal history category of VI. With an additional one-level reduction for timely acceptance of responsibility, Romero–Ortiz was subject to an imprisonment range of seventy-seven to ninety-six months. At sentencing, Romero–Ortiz objected to the sixteen-offense-level increase, arguing that his prior Florida conviction for aggravated assault did not constitute a crime of violence. The district court overruled the objection and sentenced Romero–Ortiz to seventy-seven months of imprisonment. Romero–Ortiz appealed.

## II.

Under the Guidelines, a defendant convicted of illegal reentry is subject to a sixteen-level sentence enhancement if he was convicted of a crime of violence prior to his removal or deportation. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Guidelines commentary—specifically Application Note 1(B)(iii) to § 2L1.2—further defines "crime of violence" in two ways: (1) as one of several enumerated offense categories, including "aggravated assault," and (2) in a residual clause as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." Characterization of a prior offense as a crime of violence is a question

2

No. 12-40230

of law that this court reviews *de novo*. *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).

Romero–Ortiz argues that his Florida conviction does not fall under either definition of a crime of violence and that, therefore, the district court incorrectly imposed a sixteen-level sentence enhancement on that basis. We disagree and hold that Romero–Ortiz's Florida conviction qualifies as the enumerated offense of "aggravated assault" in Application Note 1(B)(iii) to § 2L1.2 and therefore qualifies as a crime of violence. Accordingly, we need not decide whether Romero–Ortiz's conviction qualifies as a crime of violence under the residual clause of Application Note 1(B)(iii).

"When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we [use] the categorical approach that the Supreme Court first outlined in *Taylor v. United States*, 495 U.S. 575 (1990)." *Id.* at 549. "Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct." *Id.*; *see also United States v. Calderon–Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc). Because aggravated assault is not defined by the Guidelines, "we look to the 'generic, contemporary' meaning of aggravated assault, employing a 'common sense approach' that looks to the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions."[1] *Esparza–Perez*, 681 F.3d at 229; *see Taylor v. United States*, 495 U.S. 575, 598 (1990) (using the "generic, contemporary meaning" to define "burglary"). In sum, if the elements of Florida's aggravated assault statute under which Romero–Ortiz was convicted

---

[1] The government argues that, rather than looking to the Model Penal Code and the LaFave treatise, we should use the plain-meaning approach we adopted in *Rodriguez*, 711 F.3d 541. Even assuming the government is correct that extending *Rodriguez*'s plain-meaning approach to determine the generic, contemporary meaning of "aggravated assault" would add clarity to our cases addressing this issue, *Rodriguez* does not authorize that approach to offense categories defined at common law, such as "aggravated assault." *Id.* at 552 n.17 (citing *Esparza-Perez*, 681 F.3d 228).

comport with the generic, contemporary meaning of aggravated assault, then Romero–Ortiz's conviction qualifies as a crime of violence.

In *Esparza–Perez*, we relied on the definitions provided in the Model Penal Code, the LaFave treatise, and Black's Law Dictionary to conclude that "the generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances." 681 F.3d at 231. "Assault, in turn, requires proof that the defendant either caused, attempted to cause, or threatened to cause bodily injury or offensive contact to another person." *Id.* Thus, we look to the Florida statute under which Romero–Ortiz was convicted to see if it requires (1) a threat to cause bodily injury or offensive contact to another (2) under aggravating circumstances.

Florida's aggravated assault statute prohibits "an assault: (a) with a deadly weapon without intent to kill; or (b) with an intent to commit a felony." FLA. STAT. § 784.021(1). Critically for this case, Romero–Ortiz admits that he was convicted under the "deadly weapon" prong. Therefore, we need not address whether a conviction under the "with intent to commit a felony" prong comports with the generic, contemporary definition of aggravated assault. *See United States v. Fierro–Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) ("When comparing the state conviction with the generic, contemporary meaning of the crime . . . . [w]e look only to the particular subdivision of the statute under which the defendant was convicted."). In addition, Romero–Ortiz admits that use of a deadly weapon qualifies as an aggravating circumstance under our precedent. *See United States v. Mungia–Portillo*, 484 F.3d 813, 817 (5th Cir. 2007) (listing use of a deadly weapon as one of the "two most common aggravating factors"); *see also* Black's Law Dictionary 130 (9th ed. 2009) (listing "using a deadly weapon" as the prototypical example of aggravating circumstances in the definition of aggravated assault). Accordingly, our inquiry in this case boils down to whether a conviction under the "deadly weapon" prong of Florida's aggravated assault

statute requires a threat to cause bodily injury or offensive contact to another.

Romero–Ortiz argues that Florida's aggravated assault statute does not require a threat to cause bodily injury or offensive contact. He relies on *Esparza–Perez*, where we held that a Arkansas conviction did not qualify as aggravated assault because the Arkansas statute in question "did not require proof of an underlying assault." 681 F.3d at 231. More specifically, we held that the statute did not require "*any* contact or injury *or* attempt *or* threat of offensive contact or injury." *Id.* at 231–32. Romero–Ortiz attempts to analogize the Arkansas statute in *Esparza–Perez* to this case, arguing that Florida's statute does not require proof of an underlying assault.

To the contrary, and unlike the Arkansas statute in *Esparza–Perez*, a conviction under the "deadly weapon" prong of Florida's aggravated assault statute requires proof of at least a threat of bodily injury or offensive contact. To be convicted, the defendant must "with a deadly weapon without intent to kill" commit "an assault," FLA. STAT. § 784.021(1), which is in turn defined in part as an "unlawful threat by word or act *to do violence* to the person of another," *id.* § 784.011(1) (emphasis added). As further defined in Webster's Collegiate Dictionary 1396 (11th ed. 2007), the term "violence" means an "exertion of physical force so as to injure or abuse." *See also* Black's Law Dictionary 1705 (9th ed. 2009) (defining "violence" as "use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm"). Thus, inserting the definition of violence from Webster's, Romero–Ortiz's conviction required proof that he at least threatened to exert physical force so as to injure or abuse—with a deadly weapon—another person. FLA. STAT. § 784.011(1). This comports with the generic, contemporary meaning of assault as we defined it in *Esparza–Perez*: a threat "to cause bodily injury or offensive contact to another person." 681 F.3d

at 231.[2]    Any difference between the Florida statute and the generic, contemporary meaning of aggravated assault is "sufficiently minor" so as not to remove the Florida statute "from the family of offenses commonly known as 'aggravated assault.'" *Mungia–Portillo*, 484 F.3d at 817 (quoting *United States v. Sanchez–Ruedas*, 452 F.3d 409, 414 (5th Cir. 2006)).

Rather than looking to these dictionary definitions, Romero–Ortiz urges us to define "violence" using a Florida dating and sexual violence statute, which defines violence as, among other things, "stalking and aggravated stalking." FLA. STAT. § 784.046(1)(a).  Romero–Ortiz points to our decision in *United States v. Insaulgarat*, where we held that Florida's aggravated stalking law does not "require any use, or threatened or attempted use, of physical force."  378 F.3d 456, 469 (5th Cir. 2004).  Because, as he argues, stalking does not always require a threat of bodily harm or offensive contact, a conviction under Florida's statute does not necessarily fall within the generic, contemporary meaning of aggravated assault.  We are not persuaded.

In the context of a conviction under the "deadly weapon" prong of Florida's aggravated assault statute, defining "violence" to include stalking would not square with the fact that each conviction requires use of a deadly weapon.  That is, by requiring use of a deadly weapon, Florida's aggravated assault statute contemplates scenarios where a defendant threatens bodily injury or offensive contact.  *Cf. Dale v. State*, 703 So. 2d 1045, 1047 (Fla. 1997) (defining "deadly weapon" as an instrument "likely to produce death or great bodily injury").  Activities like repeated telephone calls, letters, or vandalism, as Romero–Ortiz posits, are not covered.  Moreover, although we generally recognize the *in pari*

---

[2] This result is consistent with an unpublished case from the Eleventh Circuit addressing the same issue.  *United States v. Escobar–Pineda*, 428 Fed. App'x. 961, 962 (11th Cir. 2011) (holding that because Florida statute 784.021(1)(a) requires the use of a deadly weapon, it falls within the generic, contemporary meaning of aggravated assault and therefore qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii)).

*materia* canon of statutory construction, *see, e.g.*, *Little v. Shell Exploration & Prod. Co.*, 690 F.3d 282, 289 (5th Cir. 2012), it does not apply here. Section 784.046, which contains the definitions for Florida's dating and sexual violence statute, limits its definition of violence to that section only, FLA. STAT. § 784.046(1), and we will not shoe-horn a technical definition from a dating and sexual violence statute into a generic assault statute. *See Little*, 690 F.3d at 289 ("[A] conventional limit on the canon is that courts should harmonize only those 'statutes addressing the same subject matter.'" (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006))).

Therefore, we hold that a conviction under the "deadly weapon" prong of Florida's aggravated assault statute qualifies as a crime of violence and that the district court correctly applied a sixteen-level sentence enhancement. Romero–Ortiz's sentence is AFFIRMED.