NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| C.W., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D15-3726 |
| | ) | |
| STATE OF FLORIDA, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Opinion filed November 23, 2016.

Appeal from the Circuit Court for
Hillsborough County; Barbara Twine-
Thomas, Judge.

Howard L. Dimmig, II, Public Defender,
and Tosha Cohen, Assistant Public
Defender, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Donna S. Koch,
Assistant Attorney General, Tampa, for
Appellee.


SLEET, Judge.

C.W. appeals the disposition order placing him on probation for an

indefinite period not to exceed his nineteenth birthday and withholding adjudication for

the delinquent act of possession of a weapon on school property. See § 790.115(2)(b),

Fla. Stat. (2014). We affirm the denial of C.W.'s motion to suppress without comment.

See C.N.H. v. State, 927 So. 2d 1, 3 (Fla. 5th DCA 2006) ("[T]he discovery of criminal acts or evidence in the course of a proper administrative search[] does not render the search illegal." (citing New York v. Burger, 482 U.S. 691 (1987))).  However, because the State presented insufficient evidence to support a finding that the BB gun recovered from C.W.'s book bag at school was a deadly weapon, we reverse the denial of C.W.'s motion for judgment of dismissal.

While in class at his high school, C.W. was subject to a random search. C.W. and his classmates left their personal belongings in the classroom while they were taken outside, scanned by a metal detector, and searched by a security officer. Meanwhile the children's bags and other belongings were searched in the classroom.  A security officer discovered a BB gun in C.W.'s book bag.  The school resource officer testified that the BB gun recovered from C.W.'s book bag was spring-loaded, that it was heavy and looked like a real gun, and that it was not loaded.  The officer also testified that the BB gun could be used to fire steel and copper-coated BBs, which could pierce skin or result in the loss of someone's eye, but no BBs were actually recovered from the scene.

C.W. argues that the trial court should have granted his motion for judgment of dismissal because the State failed to prove that the BB gun recovered in this case was a deadly weapon within the meaning of section 790.001(13).  We review the denial of a motion for judgment of dismissal de novo.  S.N.J. v. State, 17 So. 3d 1258, 1259 (Fla. 2d DCA 2009).

Section 790.001(13) defines a "weapon" as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table

knife." The statute does not provide a definition of "deadly weapon," nor does it specifically address whether a BB gun qualifies as a weapon or deadly weapon. Therefore, when considering whether a weapon not specifically enumerated in section 790.001(13) is a deadly weapon within the meaning of the statute, courts apply "an objective test and look at whether the object was used in such a manner that it could have caused great bodily harm or death." Tribbitt v. State, 984 So. 2d 624, 625 (Fla. 2d DCA 2008) (quoting Hutchinson v. State, 816 So. 2d 1186, 1188 (Fla. 2d DCA 2002)).

In the cases where Florida courts have determined that a BB gun qualifies as a deadly weapon, there has been evidence that the particular BB gun was capable of causing great bodily harm or that the gun was used in a manner likely to result in great bodily harm. See Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997) (holding that a BB gun was a deadly weapon when the defendant carried the BB gun in his waistband during a robbery, showed it to the victim, and threatened to return if she called police); Goodwin v. State, 68 So. 3d 309, 309 (Fla. 2d DCA 2011) (affirming conviction for robbery with a deadly weapon when the defendant threatened the victim with a BB gun even though there was evidence that it "could not easily cause great bodily harm"); Mitchell v. State, 698 So. 2d 555, 562 (Fla. 2d DCA), approved, 703 So. 2d 1062 (Fla. 1997) (holding that a BB gun was a deadly weapon when the defendant implied through his words and actions that the BB gun was loaded and operable); Depasquale v. State, 438 So. 2d 159, 160 (Fla. 2d DCA 1983) (holding that a BB gun was a deadly weapon when it had the capability to cause great bodily harm and was used in the course of a robbery); see also J.T. v. State, 47 So. 3d 934, 935 (Fla. 4th DCA 2010) (holding that whether a BB gun was a deadly weapon was a question for the jury when the State presented evidence that the BB gun was loaded and capable of causing great bodily

harm even though there was no evidence that the defendant used the gun in a threatening manner).

Here the State presented no evidence that the BB gun was loaded or operable or that C.W. implied or otherwise represented that the BB gun was operable, loaded, or capable of inflicting death or great bodily injury through his actions. See Hamilton v. State, 71 So. 3d 247, 248 (Fla. 4th DCA 2011) (reversing conviction for robbery with a weapon when "the [S]tate did not introduce any evidence to show that the toy gun could be used to cause death or inflict serious bodily harm"); Parrish v. State, 66 So. 3d 1030, 1033 (Fla. 1st DCA 2011) ("[W]here a BB gun is not loaded, and no additional evidence is introduced to establish its capacity to inflict death or great bodily harm, courts have held the evidence insufficient to call it a 'deadly weapon.' " (citing K.C. v. State, 49 So. 3d 841, 842 (Fla. 4th DCA 2010))). On appeal, the State relies on the subjective impressions of the school principal, security officer, and school resource officer who testified that the gun appeared to be real when they discovered it. However, "the subjective fear of the victim[] is not determinative of whether the object would qualify as a weapon." Tribbitt, 984 So. 2d at 625-26 (quoting Hutchinson, 816 So. 2d at 1188). There was no evidence that the gun was loaded, that it was capable of inflicting great bodily harm, or that C.W. used it in a dangerous or threatening manner.

Whether a particular BB gun qualifies as a deadly weapon under section 790.001(13) is a recurring issue in Florida courts, and it is often difficult to fully reconcile the relevant case law. This analysis would be better served by a statutory definition of "deadly weapon" or the clear inclusion or exemption of a BB gun from the definition of a "weapon" in section 790.001. See Mitchell, 698 So. 2d at 562. Although we agree with the trial court that "anything like a BB gun . . . should not be at school," its finding that

- 4 -

the BB gun in this case was a deadly weapon is not supported by competent substantial evidence.  Accordingly, we reverse for the trial court to grant the motion for judgment of dismissal and vacate the disposition order.

Affirmed in part; reversed in part; remanded with instructions.

MORRIS and BLACK, JJ., Concur.