WINSOR, J., dissenting. Even if the court were correct—even if any competent attorney would have rounded up an expert to say Plummer’s “weapon” was not a BB gun but an airsoft pistol—we should reverse. Deficient performance gets you only halfway there. Plummer had to also show prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and he didn’t. I. A jury convicted Plummer of robbing a Circle K with a weapon. At trial, the State presented the “weapon,” which a police officer testified was a BB gun. Plummer’s trial attorney challenged this testimony, extensively cross-examining the officer and arguing to the jury that the officer was simply making an assumption. In closing, counsel argued that “[w]e don’t know what this is. Is it a dart gun? Is it a water gun? We don’t know what it is.” The court instructed the jury that a “weapon” was “any object that could be used to cause death or inflict serious bodily harm.” See also Fla. Std. Jury Instr. (Crim.) 15.1.[1] Plummer argued the gun didn’t meet this definition, the State argued it did, and the jury sided with the State. Plummer then filed a postconviction motion, claiming (among other things) that counsel should have investigated whether the gun was in fact a BB gun. At the postconviction hearing, Plummer’s ballistics expert said the pistol was not a BB gun but an airsoft gun, essentially a toy.[2] The expert explained that the gun shoots plastic pellets, unlike BB guns, which shoot metal projectiles (otherwise known as BBs). He opined that the gun was not a weapon and would not likely cause serious injury. But he then acknowledged “maybe if you got shot right in the eye and it was at a pretty close range, say within ten feet, then you could possibly get sent to the hospital.” Similarly, he said that “[ijf you took one right on the retina directly on the eye, maybe you would have blindness.” At the same evidentiary hearing, Plummer’s trial attorney testified that he did not think an expert was - necessary; he believed the jury could decide whether the gun was a “weapon” as defined in the jury instructions. The lower court found that evidence that the “weapon” was an airsoft pistol and not a BB gun might have been enough to persuade the jury that Plummer did not carry a “weapon” when he robbed the Circle K. The court concluded Plummer had'met his Strickland burden, and it ordered a new trial. This court reaches the samé wrong conclusion. II. To show sufficient prejudice, Plummer had to show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. As already noted, Plummer’s own expert testified that an airsoft gun could cause permanent injury: he acknowledged that it could cause blindness or other hospital-worthy injuries.[3] Even if counsel were deficient for not finding someone to offer that very opinion, we should not say there is a reasonable probability that the verdict would have, been different. In other words, we should not say there, is a reasonable probability that the jury would have found the gun could not inflict serious bodily harm after hearing Plummer’s own expert admit the gun could inflict serious bodily harm. Because Plummer failed Strickland’s prejudice prong, we should reverse. . Florida’s robbery statute enhances the offense degree when the offender "carried a weapon,” but the statute does not define what qualifies as a weapon. § 812.13 (2)(b), Fla. Stat. (2010). Plummer does not challenge the instruction on what constitutes a "weapon” for these purposes, and the supreme court has called the definition used here "a correct statement of the law,” Dale v. State, 703 So.2d 1045, 1046 (Fla. 1997). . As the jury heard, the gun said right on it: "Not a toy, 6-millimeter caliber model. Wear eye protection to prevent serious injury to the eyes.” . Although we should limit our review to the record, it is noteworthy that the expert’s acknowledgment is consistent with the wide-ranging, extra-record materials the special concurrence marshaled. See Concurring Op. of Roberts, J., at 2 & n.7 (noting that airsoft guns have caused “penetration with loss of eyesight" (citing Tarek A. Shdzly, MD, & A. K. Al-Hussaini, MD, Pediatric Ocular Injuries From Airsoft Toy Guns, 49 J. of Pediatric Ophthalmology & Strabismus 54, 54-57 (2012))), ’